## NORTHWESTERN ELECTRIC CO. v. FEDERAL POWER COMMISSION.

### No. 9756.

Circuit Court of Appeals, Ninth Circuit.

Feb. 13, 1942.

Rehearing Denied March 13, 1942.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

John A. Laing, Henry S. Gray, and Laing, Gray & Smith, all of Portland, Or., and A. J. G. Priest, Sidman I. Barber, Reid & Priest, White & Case, and Nicholas H. Powell, all of New York City, for petitioner.

William S. Youngman, Jr., Gen. Counsel, F. P. C., Richard J. Connor, Asst. Gen. Counsel, George Slaff, Principal Atty., F. P. C., and Milford Springer, Atty., F. P. C., all of Washington, D. C. (Reuben Goldberg and Robert L. Russell, both of Washington, D. C., of counsel), for respondent.

Smith Troy, Atty. Gen., State of Washington, and Harry A. Bowen, Sp. Asst. Atty. Gen., of Olympia, Wash., for Department of Public Service of Washington, as amicus curiae.

I. H. Van Winkle, Atty. Gen., State of Oregon, Willis S. Moore, First Asst. Atty. Gen., and Alvin A. Kurtz, Gen. Counsel, Public Utilities Commission of Oregon, of Salem, Or., for Ormond R. Bean, Com'r of Public Utilities of Oregon, as amicus curiae.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HANEY, Circuit Judge.

Review is sought of an order of the Federal Power Commission.

Petitioner was organized under the laws of Washington on January 7, 1911 by two San Francisco financiers who desired to acquire a water power site to develop electricity for a paper mill in which they were interested. The promoters advanced $175,000 to petitioner for the purpose of acquiring water power sites, which amount was repaid on May 13, 1912 with interest. Petitioner thereafter decided to enter the utility business in Portland and vicinity to utilize the power developed in excess of the paper mill's requirements.

On March 14, 1911, petitioner's Board of Trustees issued to the promoters 50,000 shares of the $100 par common stock, and on May 14, 1912, petitioner's Board of Trustees increased the capital stock of petitioner from 50,000 shares of $100 par common to 100,000 shares of $100 par common, and issued the additional 50,000 shares to the promoters. This $10,000,000 of common stock was not recorded on petitioner's books until January 31, 1914, when it was entered in an account entitled "Land and Water Rights" and a corresponding credit to "Common Capital Stock".

In 1925, American Power & Light Company purchased all the common stock in petitioner at a cost of $5,095,946.48. In 1936 petitioner was authorized by the regulatory authorities of Oregon and Washington to reduce the par value of its common stock from $100 to $35. Petitioner based the reduction upon the then fair value of its assets.

From the commencement of regular operations through 1925, petitioner did not capitalize interest during construction on all its construction expenditures, except for the period from 1911 to July 1, 1914, and except for construction of one plant. Since 1925, petitioner has capitalized interest during construction, on projects costing more than $1,000, and requiring more than 30 days to complete.

Respondent prescribed a Uniform System of Accounts for Public Utilities and Licensees and required the reclassification of the electric plant of public utilities, and adjusting entries necessary to reflect the reclassification as of January 1, 1937. Petitioner submitted a purported reclassification of its electric plant accounts. Respondent made an investigation of the reclassification and issued a report[1] thereon

[1] The report mentioned was actually a joint report of respondent and the Public Utilities Commissioner of Oregon, the latter also participating in the investigation.

under date of April 26, 1940. Respondent's letter of transmittal to petitioner contained a request for a plan of disposition of the $3,500,000 common stock item, and a request that petitioner adjust its reclassification to conform with the report.

The report recommended that an item in petitioner's reclassification, constituting a capitalization of interest charges for construction between July 1, 1914 and December 31, 1925, should be eliminated. It further recommended that the amount of $3,500,000 should be retained in account 107—Electric Plant Adjustments—pending the submission to the Commission of a plan for its disposition.

Petitioner did not comply with the requests made and on June 18, 1940 respondent ordered petitioner to show cause why it should not find and determine by order that adjusting entries be made to bring the books of account in conformity with the report made. Hearing was held thereafter, and briefs were filed.

On December 6, 1940, respondent issued its opinion and findings. With respect to the interest item, the Commission found that the omission of the interest capitalization prior to the proposed reclassification was a deliberate choice on behalf of the petitioner, which was the exercise of proper accounting discretion, was not an "error", was "reaccounting" rather than "reclassification", and that it would be improper for petitioner to include such item in its account now.

With respect to the common stock item, respondent found that the issue of the common stock was a "disguised gift" by the promoters to themselves; that "there is no reliable evidence in the record that any promoters' services of demonstrable value or any other consideration was received by the" petitioner for its common stock, and

"The real cost of all the property of the Company at the time of the issuance of its Common Stock was represented by debt securities. This condition likewise prevailed on July 1, 1914, except for a small amount of Preferred Stock. Even today the Company's entire Common Stock is not represented by any assets received by the Company in exchange for it. No electric plant was received in exchange for the Common Stock; hence, no amount in respect thereof should remain in the electric plant accounts. The issuance of this stock was manipulation."

Regarding the disposition of the common stock item, respondent made the following statement:

"Considering all relevant factors, we find that it is in the interest of consumers, investors and the public to direct the disposition of the $3,500,000 write-up by requiring the Company to apply all net income above Preferred Stock dividend requirements to the disposition of the $3,500,000 in Account 107. This disposition, assuming adequate earnings, is the equivalent of obtaining ultimately from the holders of the common stock (the holding company) a consideration of $3,500,000 for the stock. Certainly dividends should not be paid on the Common Stock until it has the equivalent of a paid-in value."

The order of respondent, issued December 6, 1940, required petitioner to comply with such findings. On January 9, 1941, petitioner filed an application for rehearing. On January 21, 1941, respondent granted a rehearing with respect to the common stock item, but denied the application as to all other matters. On February 21, 1941, and prior to a decision or order of respondent on the rehearing, petitioner filed in this court its petition to review respondent's order of December 6, 1940.

The Federal Power Act [2] consists of three parts. The first part, in general, provides for the creation of the Federal Power Commission, the improvement of navigation and the development of water power. 16 U.S.C.A. §§ 791–823. Part II of such act, in general, provides for the regulation of electric companies engaged in interstate commerce. 16 U.S.C.A. §§ 824–824h. Part III of such act, in general, relates to licensees and public utilities and contains procedural and administrative provisions. 16 U.S.C.A. §§ 825–825r.

Part I, § 3, defines "net investment" in a project, the basis of which is "the actual legitimate original cost". 16 U.S.C.A. § 796(13). § 14 of such part, 16 U.S.C.A. § 807, provides that the United States may purchase a project at the expiration of the license upon payment of such net investment, not exceeding the fair value of the property, and further empowers the Commission to determine the "net investment"

---

[2] For discussion as to the title of the act see Montana Power Co. v. Federal Power Commission, 9 Cir., 112 F.2d 371, 373.

of the licensee in the project. § 20 of Part I makes provision for regulation of rates charged for power entering into interstate and foreign commerce, and stipulates that in any valuation of the property of any licensee "for purposes of rate making" no value will be claimed by the licensee or allowed by the Commission in excess of the value or values prescribed in § 14, 16 U.S. C.A. § 813.

Section 201(a) of Part II of the act, 16 U.S.C.A. § 824(a) provides as follows:

"It is hereby declared that the business of transmitting and selling electric energy for ultimate distribution to the public is affected with a public interest, and that Federal regulation of matters relating to generation to the extent provided in this Part and the Part next following [sections 824–825r of this title] and of that part of such business which consists of the transmission of electric energy in interstate commerce and the sale of such energy at wholesale in interstate commerce is necessary in the public interest, such · Federal regulation, however, to extend only to those matters which are not subject to regulation by the States."

Section 208(a) of such part provides that the Commission may investigate and ascertain the actual legitimate cost of the property of every public utility, the deprecia-. tion therein, and, when found necessary for rate-making purposes, other facts which bear on the determination of such cost or depreciation and the fair value of such property. 16 U.S.C.A. § 824g(a).

Section 301(a) of Part III of the act, 16 U.S.C.A. § 825(a) requires every licensee and public utility to make, keep and preserve such records " * * * as the Commission may by rules and regulations prescribe as necessary or appropriate for purposes of the administration of this Act [chapter] * * * Provided, however, That nothing in this Act [chapter] shall relieve any public utility from keeping any accounts, memoranda, or records which such public utility may be required to keep by or under authority of the laws of any State. The Commission may prescribe a system of accounts to be kept by licensees and public utilities and may classify such licensees and public utilities and prescribe a system of accounts for each class. The Commission, after notice and opportunity for hearing, may determine by order the accounts in which particular outlays and receipts shall be entered, charged, or cred-

ited. The burden of proof to justify every accounting entry questioned by the Commission shall be on the person making, authorizing, or requiring such entry, and the Commission may suspend a charge or credit pending submission of satisfactory proof in support thereof."

With these provisions in mind, we turn to the questions presented. It is difficult to tell what the exact contentions of petitioner are.

■ It is contended that states may regulate the accounting practices of utilities and therefore, by the express words of § 201(a), federal regulation does not extend to the regulation of accounting practices. While it is true that § 201(a) provides that "such Federal regulation" shall "extend only to those matters which are not subject to regulation by the States", the words "such Federal regulation" refer back to the kind of regulation previously referred to, i. e. to "matters relating to generation" of electricity, and to "that part of such business which consists of the transmission of electric energy in interstate commerce". As accounting of the sort involved here is not either of the things mentioned, § 201 (a) does not preclude installation of a system of accounts by respondent.

■ It is further contended that the system of accounts authorized by § 301(a) of the act must be "necessary or appropriate for purposes of the administration" of the act, and that the system of accounts prescribed by respondent is neither necessary nor appropriate. We will assume, without so deciding, that the system of accounts which respondent is authorized to prescribe, must be a system which respondent may lawfully determine to be necessary or appropriate for purposes of administration of the act. There is nothing in the act which authorizes us to determine what is necessary or appropriate for purposes of administration of the act. The duty to make such a determination is imposed by the statute on respondent. After such determination, the only question which may be presented to us is one of law. The question of law has been expressed in various words, such as: did the Commission abuse its discretion, or was the action of the Commission arbitrary or unreasonable, or was the action of the Commission based on whim, or is there any rational basis to support the view of the Commission? All these expressions lead to one conclu-

sion, which is: could any reasonable man take the view announced by the Commission? If he could, then the action of the Commission must be sustained. If he could not, then the action of the Commission cannot be upheld. See American Tel. & Tel. Co. v. United States, 299 U.S. 232, 236, 237, 57 S.Ct. 170, 81 L.Ed. 142. The mere fact that the system of accounts prescribed might appear to us to be unwise, burdensome or inferior to another system, is insufficient to show that a reasonable man could not take the view which the Commission took. Id. 299 U.S. page 236, 57 S. Ct. 170, 81 L.Ed. 142.

■ Petitioner also contends that Congress did not intend to grant to the Commission authority which could be exercised by the States with respect to accounting matters. The arguments in support of this contention need not be repeated, for the language itself discloses the Congressional intent. It authorizes the Commission to "prescribe a system of accounts to be kept by licensees and public utilities". The authority is unlimited, and restrained, if at all, only by the rule mentioned in the preceding paragraph. The mere fact that the Commission's authority over other things may be limited in the act, does not show that the authority over the subject in controversy is also limited. There is no good reason for reading into the language a limitation. We think that if Congress had intended such grant of authority to be limited, it would have been as specific in the limitation as it was in the grant.

Petitioner contends that even though the act is construed to give the Commission authority to prescribe an accounting system, the Commission may not issue regulations which oust the jurisdiction of the courts. We see no point to this contention. We know of no regulation which attempts any such action. Section 313(b) of the act, 16 U.S.C.A. 825*l*, specifically provides for review of orders of the Commission. If there is any regulation which attempts to limit that statute, it is not involved here.

The only other question before us regarding the general power of the Commission, is whether respondent, in prescribing the system of accounts here involved, prescribed a system which no reasonable man would prescribe. Petitioner argues that original cost is less significant than other evidence of value, and that if original cost can be made the sole criterion of value for purposes of utility regulation, the investor will shun utility securities. Such arguments are among those which should be considered upon the initial decision of the question as to what system should be prescribed, but insofar as the decision of the question before us is concerned, our agreement with such arguments does not show that a reasonable man could not find another sound reason for the conclusion of the Commission. In other words, the question before us is not one which calls for the display of reasons or arguments supporting another view, but one which requires a demonstration, that the reasons or arguments supporting the view of the Commission, were those which could not have been accepted by a reasonable man.

■ In this connection it is argued that rates must be based at a figure which will yield a fair return on the fair value of a utility's properties; that the courts have disapproved of the "original cost" value and have fixed the rule of "fair value" as the basis; and that therefore a system of accounts which requires petitioner to eliminate "fair value" from its accounts, is contrary to the decisions and deprives petitioner of its vested property rights without due process of law. The latter argument is unsound. Petitioner has as much property as it has ever had. The system of accounts takes nothing from petitioner. Petitioner may keep such other accounts as it desires. The present regulation only requires a particular system of accounts to be kept, not that other systems shall not be kept.

■ Furthermore, original or actual cost of the property is a factor which must be considered in determining whether a particular rate yields a fair return. Los Angeles Gas & Electric Co. v. Railroad Comm., 289 U.S. 287, 306, 53 S.Ct. 637, 77 L.Ed. 1180. While it is not the only factor, generally speaking, it is one of them. Whether the act in question requires rates to be fixed on values arrived at by the "original cost" method alone, or in conjunction with other methods, it is unnecessary to determine, for under any method "original cost" is a factor to be considered. Certainly there ought not to be any objection to the keeping of a system of accounts which will show correctly one of the factors to be considered in fixing rates—a matter within the jurisdiction of public bodies.

Turning now to the justification for respondent's view in prescribing this system, we find indications in the act, quoted above, that Congress attached great importance to the "original cost" theory. A pertinent one is the provision for purchase by the United States of a project. § 14. In addition, the reasons for prescribing an "original cost" system are almost identical with those described in American Tel. & Tel. Co. v. United States, supra, 299 U. S. 238, 239, 57 S.Ct. 170, 81 L.Ed. 142, referring to telephone companies. Consideration of these reasons leads, we think, to but one sound conclusion which is that a reasonable man could believe that such reasons warranted the system of accounts involved here. Since we have reached that conclusion, the judicial function is exhausted.

With respect to the interest item required to be eliminated from petitioner's accounts, petitioner contends that the Commission's system specifically authorizes the inclusion of such items; that uniformity is flouted by elimination of the item; and that the contention that inclusion would improperly disturb the finality of past accounting is refuted by the Commission's action with respect to the common-stock item.

There is no contention that the interest item could not have been properly included in the accounts at the time when they were born. Respondent's view is that the system it prescribed contemplated reclassification of old accounts in order that those items which did not represent "original cost" could be eliminated or corrected, and that the system did not, does not, and should not contemplate the inclusion of items which had never appeared on the old accounts. The Commission, having power to prescribe a system, likewise has power to determine the extent of the system. In determining the extent of the system, the Commission reached the conclusion that "retroactive accounting for indefinite periods in the past" would lead to chaos in accounting rather than to a desired end of finality. We think a reasonable man could take that view, and therefore the order, with respect to that item must be sustained.

With respect to the common-stock item, a rehearing of the Commission's order was granted but not decided. Until de-cided there is no "order" to review here. Federal Power Comm. v. Metropolitan Edison Co., 304 U.S. 375, 383, 58 S.Ct. 963, 82 L.Ed. 1408.

Affirmed.