## NORTHWESTERN ELECTRIC CO. et al. v. FEDERAL POWER COMMISSION.
### No. 10161.

Circuit Court of Appeals, Ninth Circuit.

March 27, 1943.

Rehearing Denied May 22, 1943.

John A. Laing and Henry S. Gray, both of Portland, Or., and A. J. G. Priest and Sidman I. Barber, both of New York City (Laing, Gray & Smith, of Portland, Or., and Reid & Priest, of New York City, of counsel), for petitioner Northwestern Electric Co.

A. J. G. Priest and Sidman I. Barber, both of New York City (White & Case and Reid & Priest, all of New York City, of counsel), for petitioner American Power & Light Co.

Charles V. Shannon, Gen. Counsel, George Slaff, and Reuben Goldberg, Attys., and Robert L. Russell, Associate Atty., Federal Power Commission, all of Washington, D. C., for respondent.

I. H. Van Winkle, Atty. Gen., State of Oregon, Willis S. Moore, First Asst. Atty. Gen., Or., and Alvin A. Kurtz, Gen. Counsel, Public Utilities Commission, of Salem, for Public Utilities Com'r of Oregon, amicus curiae.

Smith Troy, Atty. Gen., State of Washington, Fred E. Lewis, Chief Asst. Atty. Gen., and Harry A. Bowen, Asst. Atty. Gen., for Department of Public Service of Washington, amicus curiae.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HANEY, Circuit Judge.

This is the second chapter of the story of a controversy between Northwestern Electric Company, petitioner, and the Federal Power Commission. We first considered the conflict in Northwestern Electric Co. v. Federal Power Comm., 9 Cir., 125 F.2d 882. As there stated the Federal Power Act authorizes the Commission to prescribe a system of accounts. On the first review we sustained the power of the Commission to prescribe the system of accounts it did prescribe. That system requires accounts to show the original cost of the assets.

Petitioner was organized under the Laws of Washington on January 7, 1911. On May 14, 1911, there was issued to peti-

tioner's promoters 50,000 shares of $100 par common stock. A year later, there was issued to the same promoters an additional 50,000 shares of such stock. No entry of the stock was made on petitioner's books until January 31, 1914. Petitioner then entered $10,000,000 as assets in an account entitled "Land and Water Rights" and entered the same amount as a liability in an account entitled "Common Capital Stock".

In 1925, American Power & Light Company purchased all the common stock in petitioner at a cost of $5,095,946.48.

In 1933, petitioner was involved in a rate case before the Public Utilities Commission of Oregon. Petitioner there contended that as of July 1, 1914, the common stock had a value of $400,000 based on the cash value of the promoters' services to petitioner. In connection with the testimony to that effect, it made certain entries which removed the $10,000,000 from the "Land and Water Rights" account, and placed $9,600,000 in an asset account entitled "Miscellaneous Non-Operating Intangible Capital", and placed $400,000 in an asset account entitled "Organization".

Sometime prior to August 18, 1936, certain of petitioner's preferred stockholders brought an action in a state court of Washington against petitioner and American Power & Light Company seeking cancellation of the common stock or in the alternative, payment to petitioner therefor. On August 18, 1936, the parties compromised and settled the action pursuant to a stipulation that the par value of the common stock would be reduced to $35 per share. The par value was so reduced on September 16, 1936. In its books, petitioner reduced the asset account entitled "Miscellaneous Non-Operating Intangible Capital" from $9,600,000 to $3,100,000, and reduced the liability account entitled "Common Capital Stock" from $10,000,000 to $3,500,000. The asset account entitled "Organization" remained at $400,000.

As of December 31, 1936, petitioner made entries in its books adjusting the division of $3,500,000 between the two asset accounts so that then the "Miscellaneous Non-Operating Intangible Capital" account included $3,400,000 and the "Organization" account included only $100,000. In its reclassification of accounts, petitioner combined both amounts in Account 301 entitled "Organization".

The Commission made an investigation of the reclassification. It found that the "issue of the Common Stock was a disguised gift by the promoters to themselves"; that "there is no reliable evidence in the record that any promoters' services of demonstrable value or any other consideration was received by the Company for its Common Stock"; and

"The real cost of all the property of the company at the time of the issuance of its Common Stock was represented by debt securities. * * * Even today the Company's entire Common Stock is not represented by any assets received by the Company in exchange for it. No electric plant was received in exchange for the Common Stock; hence, no amount in respect thereof should remain in the electric plant accounts. The issuance of this stock was manipulation."

It concluded by finding "that the $3,500,000 item is a write-up".

The Commission directed that the item should be entered in Account 107, entitled "Electric Plant Adjustments". In considering a plan of disposition of that account, the Commission said:

"The Commission would be justified, as a matter of proper accounting, in ordering, under the provisions of Section 301(a) of the Federal Power Act, the immediate charging off of the amount in question. After considering the financial history and present status of the Company, as reflected in reports to stockholders and to this Commission, we are of the opinion that we should not order the amount to be charged off at once."

&ast; &ast; &ast; &ast; &ast; &ast;

"Considering all relevant factors, we find that it is in the interest of consumers, investors and the public to direct the disposition of the $3,500,000 write-up by requiring the Company to apply all net income above Preferred Stock dividend requirements to the disposition of the $3,500,000 in Account 107. This disposition, assuming adequate earnings, is the equivalent of obtaining ultimately from the holders of the common stock (the holding company) a consideration of $3,500,000 for the stock. Certainly dividends should not be paid on the Common Stock until it has the equivalent of a paid-in value."

The Commission's order of December 6, 1940, ordered petitioner to credit Account 107 each year with an amount equal to its net income less its preferred stock requirements "until the amount of $3,500,000 shall have been entirely extinguished. Petitioner

filed a petition for rehearing before the Commission. As it was still pending at the time of petitioner's first petition to review, we were unable to consider the order insofar as it related to the common stock item. 125 F.2d 882, 887. After our decision of the first petition to review, the Commission denied petitioner's petition for a rehearing, and petitioner then filed the instant petition to review.

Petitioner contends that the findings of the Commission are not supported by substantial evidence. It points to evidence of the surplus of petitioner and the "fair" value of its assets. The Commission properly held that such evidence had no bearing on the question of original cost. The Commission proceeded on the theory that the capital of petitioner, should have come, in part, from sale of its common stock; and that such proceeds could then be traced into the corporate assets. It could properly reason that if nothing was received for the stock, nothing could be traced into the corporate assets.

■ Section 301(a) of Part III of the Federal Power Act, 16 U.S.C.A. § 825(a), provides in part: "The burden of proof to justify every accounting entry questioned by the Commission shall be on the person making, authorizing, or requiring such entry, and the Commission may suspend a charge or credit pending submission of satisfactory proof in support thereof". We take it that the statute is not so broad as it seems on a first reading of it. The words "burden of proof" are commonly used in two senses: (1) the duty to prove a charge by a degree of proof such as a preponderance of evidence, clear and convincing proof, or beyond a reasonable doubt; and (2) the duty to go forward with the evidence. Department of Water and Power v. Anderson, 9 Cir., 95 F.2d 577, 582, 583. The Model Code of Evidence of the American Law Institute uses "burden of persuasion of a fact" and "burden of producing evidence of a fact" to avoid use of the confusing words "burden of proof" (p. 71). In what sense is "burden of proof" used in the statute?

■ "Burden of proof" in the sense of "persuasion" is meaningless unless it is also said how strongly a person must be persuaded. For example, if it is said that a person must be persuaded by not less than a "preponderance of evidence" it is meant that such evidence is "evidence of greater convincing force". Model Code of Evidence, supra, p. 75. In some kinds of cases, it is often said that the degree or amount of proof must be "clear and convincing" or "clear and satisfactory" proof, implying a greater convincing force. In criminal cases, proof of guilt must be "beyond a reasonable doubt", which implies a still greater degree of proof. It is one thing to be merely convinced of a fact, and another to be convinced beyond a reasonable doubt. Accordingly, unless it is specified how far you must be convinced, "burden of proof" in the sense of "persuasion" is meaningless.

The statute in question gives no indication of the degree of proof required unless it be found in the subsequent words "satisfactory proof". If by those words it is meant that the degree of proof must be "satisfactory" it is obvious that it is the Commission who must be satisfied. It is also obvious that evidence might be satisfactory to the Commission and yet not be substantial. In such a case, the finding, supported by the "satisfactory" but unsubstantial evidence, would have to be set aside. 16 U.S.C.A. § 825$l$(b). This is especially true where, as here, the evidence is submitted before the item is suspended. Furthermore, the statute does not in express words require or state that the proof must be satisfactory to the Commission. What it says is that the Commission may suspend an entry "pending submission of satisfactory proof in support thereof". Likewise, the statute does not expressly say that the specified person has the burden of justifying every accounting entry by satisfactory proof.

■ In view of this reasoning, we think the word "satisfactory" is used in the sense of "adequate" which in turn would mean "substantial". As thus construed, the statute would mean that the Commission could suspend an entry pending submission of substantial evidence, which, if believed, would justify such entry; and since no degree of proof is mentioned, the words "burden of proof" mean burden of going forward with the evidence.

■ In the instant case, there was evidence that the promoters' services were worth some rather indefinite amount. However, the Commission considered it as not being "reliable". The evidence in support of the item was the market value of the stock in 1916 and in 1925, and the value placed on the stock in 1934, as of March 1, 1913, in an income tax settlement by one of the promoters. Regarding this evidence,

'the Commission said: "This judgment estimate is without probative value because it is not based upon the value of the consideration received by the Company at the time the Common Stock was issued". This evidence is not direct evidence of original cost, and while, conceivably, the Commission might have inferred therefrom that the promoters' services were worth a particular sum because the stock had a particular market value, the Commission was not compelled to, and did not, draw that inference. The drawing of inferences is a matter entrusted to the Commission (National Labor Relations Board v. Electric Cleaner Co., 315 U.S. 685, 697, 62 S.Ct. 846, 86 L.Ed. 1120, and cases cited) and we cannot interfere unless we can say as a matter of law that the finding is not supported by substantial evidence—something we cannot say here.

■ The arguments that the actual values of petitioner's business has been ignored by the Commission are not pertinent. On the first review we approved the system of accounts prescribed, and we will not revive the arguments.

■ Petitioner argues that the effect of the findings is an adjudication that the common stock is not legally paid-up; that such a question is a judicial one, to be determined only by the courts and law of Washington; and that the Commission has thus arrogated judicial powers. The act, however, authorizes the Commission to "determine by order the accounts in which particular outlays and receipts shall be entered, charged, or credited". 16 U.S.C.A. § 825(a). The Commission was authorized to do what it did, regardless of whether the effects mentioned by petitioner result. The only argument which can be made is that such statute is void—a contention not made here.

■ Petitioner also contends that the order is arbitrary and capricious because: (1) it ignores petitioner's large existing surplus; (2) it jeopardizes future dividends on preferred stock; (3) it rests on the assumption that "the $3,500,000 which now represents the Common Stock of Northwestern must be attributed entirely to that Company's electrical facilities, operations and values, without consideration of its general corporate and non-electrical properties, operations and values, over which the Commission has no jurisdiction whatever"; and (4) in ignoring the actual values of petitioner's properties.

The first and fourth of these reasons are not pertinent because they have no bearing on the "original cost" theory of the system of accounts. The second is considered more fully below. With respect to the third reason, we fail to see how any assumption at all is involved. The Commission is merely attempting to compel petitioner's books to show "original cost" of its properties, after finding that the books show a cost of such properties in an amount of $3,500,000 too high.

■ The remaining questions arise from the effect of the order. It is contended that since the state law prohibits the payment of dividends out of capital, dividends cannot be paid on petitioner's preferred stock because the effect of the Commission's order is to declare petitioner's capital to be impaired. The order does not prohibit payment of dividends on the preferred stock—in fact, it expressly makes it possible that such dividends may be paid. Regarding impairment of capital, the Commission has decided that the capital of petitioner, considered from the "original cost" theory is impaired. It did not decide that such capital, considered from a "fair value" standpoint, is impaired. If the state law prohibits payment of dividends when the corporate capital is impaired, when considered from an "original cost" standpoint, and if the state courts accepted the Commission's finding, then petitioner is in no position to complain that it can no longer violate the law. On the other hand, if the state law only prohibits payment of dividends when there is an impairment of capital, considered from a "fair value" standpoint, then the order, which does not make any determination of that question, would be no obstacle to the payment of dividends.

Finally, it is argued that the order deprives petitioner of its property without due process of law. We previously held that petitioner was not deprived of the value of its properties without due process of law. 125 F.2d 882, 886. However, it is now said that the effect of the order is to make American again pay for stock which it bought on the open market in good faith, since the earnings become frozen in the capital of the corporation. In addition, computed at the present earning rate, it will be between ten and twenty years before the common stock will again be in the position so that dividends can be paid thereon. It is said, therefore, that while such an order might be valid as against the promoters,

if they still held the stock, it is highly unfair as against American, and that such order deprives it of the value of the stock and its normal right to dividends.

■ While it might be said that American is not entitled to the earnings until declared as dividends, and therefore nothing has been taken from it, that view disregards realities. It is certainly possible, if not probable, that the market value of the stock would decrease, probably substantially, if no dividends can be paid thereon for ten years or more. However, in Kansas City So. Ry. v. United States, 231 U.S. 423, 455, 34 S.Ct. 125, 58 L.Ed. 296, 52 L.R.A., N.S., 1, it was held that a railroad could be compelled to charge a disputed item against its earnings. The order involved here requires the same thing, and adopts the principle approved in the cited case. If a company can be compelled to charge an item against earnings, for one year, we see no reason why it cannot be compelled to make the same kind of entries for succeeding years.

■ The order requires the charge against net earnings of petitioner less its preferred stock dividend "appropriations" for each calendar year. The Commission concedes that the word "appropriations" is a typographical error and should be "requirements". We consider the order as amended in that respect.

Affirmed.

HEALY, Circuit Judge (concurring).

I concur in the result and in the main with what is said in the opinion. However, I am unable to see the force of the discussion concerning the interpretation of § 301(a) of Part III of the Federal Power Act.

That statute does not appear to me ambiguous; and if it were so, I doubt that the ambiguity is dissipated by the discussion. The statute with which we are concerned here is § 313(b) which provides that "the finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive." The Commission's finding that the item of $3,500,000 is a writeup is supported by evidence, or legitimate inference drawn therefrom, that it has no basis except water. It may be debatable whether, in line with correct accounting practices, the item should not have been charged to surplus. But there is substantial evidence to support the disposition of the item ordered by the Commission.