# NORTHWESTERN ELECTRIC CO. ET AL. *v.* FEDERAL POWER COMMISSION.

No. 195.   Argued January 4, 5, 1944.—Decided January 31, 1944.

*Mr. A. J. G. Priest,* with whom *Messrs. John A. Laing, Henry S. Gray,* and *Sidman I. Barber* were on the brief, for petitioners.

*Mr. Charles V. Shannon,* with whom *Solicitor General Fahy, Assistant Attorney General Shea,* and *Messrs. Chester T. Lane, Paul A. Sweeney,* and *Reuben Goldberg* were on the brief, for respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

Petitioners assert that an order of the Federal Power Commission made pursuant to its authority to prescribe a uniform system of accounts for electric utilities is invalid because in excess of the Commission's statutory power and in violation of the Fifth and Tenth Amendments to the Constitution.

Northwestern Electric Company is an operating utility all of whose common shares are owned by American Power & Light Company. Shortly after organization Northwestern issued 100,000 shares of $100 par common stock to promoters. Later the transaction was entered on its books as "Land and Water Rights" with a corresponding credit to "Common Capital Stock." Northwestern received no cash or property for the stock so issued. The company prospered and its common stock became valuable. In 1925 American purchased all the common stock for $5,095,946.48. In 1936 Northwestern was permitted by the regulatory authorities of the States of Oregon and Washington, in which it operates, to reduce the par value of its common stock from $100 to $35, thus reducing the outstanding common to $3,500,000. This reduction was

made in order that the stock might then represent the fair value of the company's assets. Entries on the asset side were written down $6,500,000 to offset the reduction in common stock liability.

Acting under § 301 (a) of the Federal Power Act of 1935 [1] the Commission prescribed a uniform system of accounts for utilities and ordered reclassification of their electric plant accounts with necessary adjusting entries to reflect such new classification as of January 1, 1937. Northwestern submitted a classification and the Commission, after investigation, issued a report thereon and requested Northwestern to submit a plan for disposition of the item of $3,500,000 upon its books and recommended that the amount should be transferred to Account 107—Electric Plant Adjustments—pending submission of such a plan. Northwestern failed to comply with these requests and an order to show cause was issued upon which a hearing was held. The Commission found that the cost of the physical property was all represented by obligations issued by the company and that the common stock did not represent money or property received. The Commission further found that in the interest of consumers, investors, and the public, the $3,500,000 write-up to be entered in Account 107 should be disposed of by applying net income above preferred stock dividend requirements to its elimination, and added that this disposition would insure the company's receiving value to balance common stock liability and that dividends ought not to be paid on the common stock until it had an equivalent paid-in value. An order was entered requiring Northwestern to comply with the finding.

The Commission granted a rehearing only as respects the required disposition of the asset item of $3,500,000, but refused a rehearing on all other matters involved in the

[1] 49 Stat. 847, 854, 16 U. S. C. § 825.

case. Northwestern obtained a review in the Circuit Court of Appeals,[2] which sustained the order as against Northwestern's contentions that the Commission was without power to make an order for the keeping of its accounts, because of existing State regulation; that the Commission's action was not sustained by the proofs before it, was an abuse of discretion, and constituted a denial of due process of law, since the system of accounts prescribed was to show the company's plant at the amount it cost rather than at its present fair value. Inasmuch as the rehearing was pending before the Commission on the disposition to be made of the write-up, the Circuit Court of Appeals declined to pass upon that matter.[3]

In connection with the rehearing, the Commission requested the company to suggest any disposition of the $3,500,000 item it thought appropriate. The company refused to make any suggestion, its position being that the entry should remain in Account No. 107. The result of permitting it thus to remain in the plant and property accounts of the company would be a continuance of a showing on its books of actual asset value to balance the outstanding common stock liability. The Commission reaffirmed its order and Northwestern again sought review in the Circuit Court of Appeals. American, which had been permitted to intervene, joined in the application for court review. The Circuit Court of Appeals refused to disturb the Commission's order.[4]

The Commission's power to prescribe a uniform system of accounting and to require Northwestern to keep accounts accordingly is not open to doubt. Its action was

[2] As authorized by § 313 (b), 49 Stat. 860, 16 U. S. C. § 825*l*.

[3] *Northwestern Electric Co.* v. *Federal Power Commission*, 125 F. 2d 882.

[4] 134 F. 2d 740.

fully justified by the Act,[5] the relevant provisions of which are within the legislative power.[6] The only inquiries now open are whether the order as to the disposition of the $3,500,000 item appearing in Account 107 goes beyond the Commission's statutory mandate or constitutional limitations. We hold that it does neither.

The case presents only a question of proper accounting. In the light of the admitted fact that there has been a write-up of three and one-half million dollars on the asset side of the accounts to balance a stock liability created by the company in the same amount, which represents no value received for the stock issued, any accounting which limits plant items to their actual value when and as acquired demands that this write-up be eliminated from the accounts. Those in which the company previously carried the item were "Land and Water Rights," "Miscellaneous Non-Operating Intangible Capital," and "Organization." A mere write-up belongs in none of these accounts and cannot properly appear in any other account on the asset side of the ledger. If it should so remain, it would have to be in a new account reflecting present value in excess of actual cost which would, in effect, be a plant appreciation account and the Commission's form of accounting does not permit the carrying of any such item in the asset account since its system is a cost system of accounting.

The question is whether the write-up must be written off the books in some manner. Northwestern says it

---

[5] Sec. 201 (a), 49 Stat. 847, 16 U. S. C. § 824 imposes regulations upon interstate utilities; § 205, 49 Stat. 851, 16 U. S. C. § 824d gives the Commission authority to regulate rates, and § 301 (a) requires the keeping of accounts by utilities and authorizes the Commission to make rules and regulations necessary or appropriate for the purposes of the administration of the Act.

[6] *Kansas City Southern Ry. Co.* v. *United States,* 231 U. S. 423; *Norfolk & Western Ry. Co.* v. *United States,* 287 U. S. 134; *American Tel. & Tel. Co.* v. *United States,* 299 U. S. 232.

should not be, but it offered no evidence before the Commission to show that in accounts based upon cost any such item should appear in plant account or elsewhere. There was expert evidence by Commission's witnesses that it must be eliminated. Nevertheless the petitioners insist the Commission's order as to disposition is arbitrary.

Although, as suggested in a brief filed by the American Institute of Accountants, the Commission's prescribed method of eliminating the write-up may not accord with the best accounting practice, it is sustained by expert evidence. It is not for us to determine what is the better practice so long as the Commission has not plainly adopted an obviously arbitrary plan.[7]

The objections based upon the Constitution are without merit and need but brief notice. That the accounting method prescribed interferes with the function of management to some extent is beside the point.[8] That the Commission's action prevents the company from redressing the deficiency of paid-in capital by entering among its assets appreciation of value subsequent to the issue of the common stock takes nothing from the company or the stockholders. Although if American had purchased the assets of Northwestern it might have been allowed to place among its assets on its own books the actual cost to it of the physical property of Northwestern, the fact is irrelevant upon the question whether Northwestern may carry a fictitious asset account representing estimated value of capital stock issued neither for money nor for property at exchange value.

Nothing in the statute or the order prevents Northwestern keeping other accounts if it so desires which

---

[7] See *Norfolk & Western Ry. Co.* v. *United States, supra,* 141; *American Tel. & Tel. Co.* v. *United States, supra,* 236.

[8] *Norfolk & Western Ry. Co.* v. *United States, supra,* 143.

will give information with regard to estimated present appreciated value of its assets.

We find nothing in the statute which would have prevented a readjustment of the common stock account or the earned surplus account if the company had been willing and had proposed such readjustment to bring the statutory accounts into line with the Commission's prescribed system.

The Commission's order does not violate the reserved rights of the states under the Tenth Amendment. We are not here concerned with what the regulatory authorities of Oregon or Washington may or may not demand or permit. Whatever that action may be, it is subordinate to Congress' appropriate exercise of the commerce power. The Commission's order does not purport presently to affect or constrain action by the states within their fields.

We are not called upon to make any decision as to the ability of the company legally to declare and pay dividends.

The petitioners attack the regulations as in conflict with the powers and the regulations of the Securities and Exchange Commission, which also has regulatory power over Northwestern; but an examination of the statute and of the orders and proceedings of the Securities and Exchange Commission satisfies us that no conflict exists.

The judgment is

*Affirmed.*