## PACIFIC POWER & LIGHT CO. et al. v. FEDERAL POWER COMMISSION.

### No. 10386.

Circuit Court of Appeals, Ninth Circuit.

March 10, 1944.

Rehearing Denied April 7, 1944.

John A. Laing and Henry S. Gray, both of Portland, Or. (Laing, Gray & Smith, of Portland, Or., of counsel), for petitioner Pacific Power & Light Co.

A. J. G. Priest and Adrian L. Foley, both of New York City (Reid & Priest and White & Case, all of New York City, of counsel), for petitioner American Power & Light Co.

Charles V. Shannon, Gen. Counsel, and Reuben Goldberg, Senior Atty., Federal Power Commission, both of Washington, D. C., for respondent.

Before GARRECHT, STEPHENS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

This is a proceeding for review, under § 313(b) of the Federal Power Act, 49 Stat. 847, 860, 16 U.S.C.A. § 825*l*(b), of an order of the Federal Power Commission requiring Pacific Power & Light Company to correct its electric plant accounts in conformity with a finding of the Commission.

Originally the petition attacked a provision of the order requiring Pacific to eliminate an acquisition "writeup" (classified in Account 107) by a charge to surplus; but objection to this feature has been abandoned in the light of the holding in Northwestern Electric Co. v. Federal Power Commission, 64 S.Ct. 451. The only part of the order now challenged is paragraph (H) providing for the amortization of an amount of $2,741,591.66 by annual charges to income over a 10-year period beginning in 1942. This amount is the portion of the acquisition cost to Pacific of a number of utility systems which is in excess of the original cost thereof. The amount has been placed in Account 100.5, Electric Plant Acquisition Adjustments. Amounts so recorded are required under the Commission's system of accounts, to be "depreciated, amortized, or otherwise disposed of, as the Commission may approve or direct." The dispute is whether the amount should have been permitted to remain in this account, as petitioners contend, or whether the Commission properly ordered its gradual elimination.

A brief review of the manner in which Pacific acquired its properties will suffice, since the facts are not in dispute. American Power & Light Company is the parent com-

pany of Pacific and owns all the latter's common stock. As early as 1909 American began the acquisition of numerous small and scattered electric utility properties in the Pacific Northwest with the idea of combining them into an integrated system. In 1910 American caused Pacific to be organized and to this subsidiary it transferred the properties acquired. The amount classified in Account 100.5 had its genesis in these acquisitions, the great bulk of which were made twenty to thirty-three years ago. A few of the plants were acquired by American for less than their original cost, but the acquisition cost of most of them was in excess of the original cost to the persons first devoting them to public service. As already said, the amount in Account 100.5 represents the net excess of acquisition cost over original cost. It is not questioned that the transactions in which American acquired the properties were arm's length transactions or that the payments therefor were bona fide.

■ The Commission's uniform system of accounting requires that utility companies reclassify their electric plant accounts by prescribed accounts on the basis of "original cost," that is to say, the cost of operating units or systems to the persons first devoting them to public service. In the case of properties acquired as these were the excess of acquisition cost over original cost thus disclosed is required to be transferred to Account 100.5. The power of the Commission to prescribe a uniform system

of accounting and to require the utility company to keep accounts accordingly is not now open to question. The law on the subject has been sufficiently covered in the opinions of this court in Northwestern Electric Co. v. Federal Power Commission, 9 Cir., 125 F.2d 882, and Id., 9 Cir., 134 F.2d 740, and in the affirming opinion of the Supreme Court, Northwestern Electric Co. v. Federal Power Commission, supra, 64 S. Ct. 451, and we need not go over the matter again.[1]

■ The present case, like that involving the Northwestern Electric Company, appears to us to present no more than a problem of proper accounting. The decisive inquiry is whether the Commission's order has substantial support in the record.[2] The Commission found that the sum classified in Account 100.5 represents payment for intangibles, such as goodwill, going value, nuisance value, and franchise and monopoly values, all of which were thought to be rooted in and associated with prospective earning power.[3] Said the Commission: "It is common knowledge that intangibles have questionable continuing value even in an unregulated industry. They should not be permitted to rest permanently in the accounts of a public utility, and the record of this case shows that the proper accounting treatment is to amortize them rapidly."[4]

The Commission's expert accountants testified that intangibles bought and paid for have no permanent place in the plant accounts of a public utility, that "intangibles

[1] These cases affirmed the Commission's authority to require the recording of a writeup in Account 107, Electric Plant Acquisition Adjustments, and the elimination of the writeup by applying net income above preferred stock dividend requirements.

[2] Section 313(b) of the Act provides that "the finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive."

[3] The treasurer of Pacific testified that he thought it "fair to say that the amount paid by American in excess of the original cost for those properties represented payment for intangibles." Whether this witness agreed that these intangibles are rooted in prospective earning power is here a subject of dispute.

[4] The Commission quoted from Sanders, Hatfield & Moore, A Statement of Accounting Principles, published in 1938 by American Institute of Accountants. The authors, speaking of intangible assets

such as goodwill, state that the knowledge that goodwill has been widely used to capitalize exaggerated expectations of future earnings leaves an almost universal feeling that the balance sheet looks stronger without it. "When actual consideration has been paid for goodwill it should appear on the company's balance sheet long enough to create a record of the fact in the history of the company. * * * After that, nobody seems to regret its disappearance when accomplished by methods which fully disclose the circumstances." While these statements refer to goodwill, the authors say that "goodwill is the most important and the typical intangible asset, so that a discussion of it will in part serve for the group."

Consult also Preinreich, The Law of Goodwill, Dec. 1936, 11 Acctg. Rev. 317, 325–326, where it is said that "franchise, going value, and goodwill are one and the same thing."

are evasive and disappear without being seen," and that there is no more reason to retain permanently the cost of the intangible in the accounts than there is to retain the cost of tangible property after it has been physically retired. These witnesses pointed out that the intangibles in this instance have been on the books a great many years, and stated that in their judgment correct accounting practice indicated that the amount in Account 100.5 be disposed of in the manner later ordered by the Commission. We may add that the physical property with which these intangibles were associated was not shown to be in existence as of the present day.

■ Petitioners argue that it is contrary to the concept of due process to treat as substantial evidence the testimony of the Commission's own accountants; and they cite accounting authorities to prove that there is marked difference of opinion and practice as to whether or not goodwill should be written off, and if so, by what steps.[5] We think the regulatory body may proceed on the testimony of expert accountants whether they are attached to its staff or are retained by the utility, so long as the Commission is satisfied of their integrity. It is not for the courts to resolve differences of opinion among accounting authorities. Northwestern Electric Co. v. Federal Power Commission, 64 S.Ct. 451. "What has been ordered must appear to be 'so entirely at odds with fundamental principles of correct accounting' * * * as to be the expression of a whim rather than an exercise of judgment." American T. & T. Co. v. United States, 299 U.S. 232, 236, 57 S.Ct. 170, 172, 81 L.Ed. 142.

■ It is complained that the order was made in disregard of the present fair value of Pacific's properties, and that the elimination of the acquisition cost of these intangibles from the fundamental accounts of the utility distorts its base for rate-making purposes. However, this is not a proceeding for the fixing of rates. The order does not prohibit the keeping of other accounts and Pacific may maintain a record of the acquisition cost of these intangibles for whatever such record may be worth, as it may maintain other accounts "which will

give information with regard to estimated present appreciated value of its assets," Northwestern Electric Co. v. Federal Power Commission, supra, page 454 of 64 S.Ct.

■ It is contended that the Commission's order is at loggerheads with the holding of the Supreme Court in American T. & T. Co. v. United States, supra. Speaking of a system of accounts promulgated by the Federal Communications Commission, and referring to an account similar to Account 100.5, the Court there said (page 240 of 299 U.S., page 174 of 57 S.Ct., 81 L.Ed. 142) that the Commission is not under a duty to write off the whole or any part of the balance in such an account "if the difference between original and present cost is a true increment of value." From this and other language of the opinion it is argued that the difference between original and present cost shown on the company's books may not be written off if it represents a true increase of value. But the Court also intimated that the acquisition cost in excess of original cost could properly be disposed of after the character of the item had been determined. It said (page 242 of 299 U.S., page 175 of 57 S.Ct.) that the item is "subject to be taken out of that account and given a different character if investigation by the Commission shows it to be deserving of that treatment," and that the disposition of the item "must depend upon evidentiary circumstances, difficult to define or catalogue in advance of the event." In the case before us the Commission found that the capitalization of these intangibles represents essentially a capitalization of prospective earning power,[6] having no continuing place in the accounts of a public utility. As already intimated, we think the evidence supports the finding.

■ While the objection was not urged in petitioners' applications for rehearing before the Commission, it is here claimed that the amortization, if made at all, should have been made as an operating expense rather than as an income deduction. Section 313(b) of the Act does not permit review unless the specific grounds of objection are urged upon the Commission. However, it would seem that Pacific's income available for surplus is the same whether

---

[5] Sanders, Hatfield & Moore, in their work quoted from in note 4, supra, state that while the "regular amortization of goodwill is not considered imperative,"

such treatment "is not considered objectionable."

[6] Consult Niagara Falls Power Co. v. Federal Power Commission, 2 Cir., 137 F.2d 787, 794.

the amortization is made as an operating expense or as an income deduction, and in neither event are we able to see that Pacific is deprived of any property. Aside from the testimony of the Commission's experts, a number of accounting authorities are cited in support of the propriety of charging the item against income.

The Commission's order is affirmed.