AMERICAN POWER & LIGHT CO. v. SECURITIES AND EXCHANGE COMMISSION.

No. 3966.

Circuit Court of Appeals, First Circuit.
June 19, 1944.

R. A. Henderson, A. J. G. Priest, James S. Regan, and Reid & Priest, all of New York City, for petitioner for review.

Homer Kripke, Asst. Sol., Roger S. Foster, Sol., and Morton E. Yohalem, Counsel, Public Utilities Division and Alfred Hill, all of Philadelphia, Pa., for respondent.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

This case is now before us on respondent's motion to dismiss a petition filed in this court by American Power & Light Company under § 24(a) of the Public Utility Holding Company Act of 1935, 49 Stat. 834, 15 U.S.C.A. § 79x(a), to review portions of an order of the Securities and Exchange Commission.

The Commission on July 10, 1941, instituted proceedings under §§ 11(b)(2), 12(b)(c) and (f) and 15(f) of the Act, 15 U.S.C.A. §§ 79k(b)(2), 79l(b, c, f), 79o(f), against Florida Power & Light Company, American Power & Light Company (the present petitioner) and Electric Bond & Share Company. Florida is a public utility company incorporated in the state of Florida and is engaged in the business of supplying electricity and gas to a large number of communities in that state. All the common stock of Florida is held by American, a registered holding company incorporated in the state of Maine. American in turn is controlled by Bond & Share as the top holding company.

The proceedings raised issues as to the existence of substantial write-ups in the plant account of Florida; the adequacy of its depreciation reserve; the necessity for stopping dividends on preferred and common stocks held by American and interest on the debentures owned by American; the existence of an unfair and inequitable distribution of voting power among Florida's various classes of securities and security holders; the steps necessary to

cure such inequities, if found to exist, including subordination to publicly held securities of holdings by American of Florida's preferred stock and debentures.; and 'the treatment to be accorded certain sums received by American from Florida on or about July 1, 1941, as dividends on preferred stocks.

By way of partial answer to the matters complained of by the Commission, Florida and American filed joint applications, and subsequent amendments thereto, seeking approval of proposals for recapitalization and refinancing of Florida involving, among other things, certain alterations in the securities of Florida held· by American. By order of the Commission these applications were consolidated for hearing with the aforesaid proceedings which had been instituted by the Commission.

On December 28, 1943, the Commission filed its findings, opinion and order in the consolidated proceedings. The order granted the applications of Florida and American for approval of their proposals for the recapitalization and refinancing of Florida. Except in so far as it granted such applications, the order required no changes in Florida's capital structure or in American's holdings of Florida's securities.

The order did, however, in paragraphs 2 and 4, direct Florida to make certain accounting entries relating to matters not covered by the proposals contained in the applications which had been filed by Florida and American. These two paragraphs of the order are the only ones which American seeks now to have us review in the pending petition. These paragraphs of the order read as follows:

"(2) It is further ordered that Florida Power & Light Company shall classify in Account 107 and eliminate from the plant account by charge to earned surplus not later than December 31, 1944, an amount of $1,815,655 consisting of capitalized intra-system profits paid to affiliated companies as construction and engineering fees; * * *

"(4) It is further ordered that pending final determination of the amount and disposition to be made of Account 100.5 items presently in the plant account of Florida,

Florida shall annually beginning with the calendar year 1944 appropriate out of earned·surplus to a contingency reserve at least $700,000, such act of appropriation to be without prejudice, however, to respondents' right to contest the validity of any definitive order with respect to such items as may ultimately be issued; * * *."

Paragraph 2 of the order, above quoted, relates to certain engineering and construction fees capitalized by Florida in its plant account and paid to Phoenix Utility Company, a wholly owned construction subsidiary of Bond & Share, in connection with the construction of interconnections and additional generating facilities.

Paragraph 4 of the order, above quoted, was based on the fact that American had paid a greater sum for the properties transferred by it to Florida at the latter's organization than the original cost of those properties to the persons who had first devoted them to public service. The object of the Commission's order was to require Florida ultimately to value the properties transferred to it by American on the basis of the original cost of those properties to such persons. The same object was sought by the Commission with respect to those properties purchased by Florida itself after organization.[1] It was indicated that the adjustment on account of these two items might exceed $10,000,000. With reference to this matter, the Commission stated in its opinion: "We are cognizant, however, of the fact that the exact amount includible in Account 100.5 has not been finally established and will not be until the original cost study of the company is completed and has been reviewed by us. We believe that in the interests of orderly procedure, the company should be afforded an opportunity to complete its study and to have that study reviewed by us before we take definitive action either with respect to classification in the appropriate account or with respect to a formal program of disposition. However, since all present indications are that there will be approximately $10,500,000 of such acquisition adjustments ultimately to be disposed of, conservative accounting requires that the company should begin now to make provision for such disposition. We will therefore order (subject to further order

---

[1] See Kripke, A Case Study in the Relationship of Law and Accounting: Uniform Accounts 100.5 and 107, 57 Harv. L.Rev. 433 (April, 1944); see also Pacific Power & Light Co. v. Federal Power Commission, 9 Cir., 1944, 141 F.2d 602.

of the Commission in connection with the company's original cost study or otherwise) that commencing in 1944, the company annually appropriate out of earned surplus to a contingency reserve, the sum of at least $700,000, such act of appropriation, however, to be without prejudice to its right to contest the validity of such definitive order with respect to the matter as may ultimately be issued."

Section 24 of the Act, under which American seeks to have this court review paragraphs 2 and 4 of the Commission's order, reads as follows: "Sec. 24. (a) Any person or party aggrieved by an order issued by the Commission under this title may obtain a review of such order in the circuit court of appeals of the United States within any circuit wherein such person resides or has his principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the entry of such order, a written petition praying that the order of the Commission be modified or set aside in whole or in part. A copy of such petition shall be forthwith served upon any member of the Commission, or upon any officer thereof designated by the Commission for that purpose, and thereupon the Commission shall certify and file in the court a transcript of the record upon which the order complained of was entered. Upon the filing of such transcript such court shall have exclusive jurisdiction to affirm, modify, or set aside such order, in whole or in part. * * *"

Paragraphs 2 and 4 of the order are directed only to Florida; American is not mentioned therein nor required to do anything or refrain from doing anything. No doubt Florida is a "party aggrieved", entitled to have the order reviewed in the appropriate circuit court of appeals. In fact, after the Commission filed its motion to dismiss American's petition at bar, Florida filed in the Circuit Court of Appeals for the Fifth Circuit a petition in substantially identical terms seeking review of paragraphs 2 and 4 of the Commission's order. The Commission contends, in support of its motion to dismiss, that Florida is the only "party aggrieved" by the order, and that American, whose only interest in the matter is derived through its holding of the common stock of Florida, has no

independent standing to seek a review of the order pursuant to § 24(a).

On the other hand, American contends: "While some of the grounds of objection to the Orders complained of are available to both Florida and American, American is the party entitled to urge that the appropriations from earned surplus required by the Orders will deprive American of dividends from the money so appropriated. Undoubtedly the Commission will contend that Florida cannot complain that American is being deprived of dividends as a result of the Orders." The Commission denies that its motion to dismiss is a procedural manœuvre designed to block the Florida-American interests out of arguments which should be available to them. In its brief the Commission states that it does not contend that "Florida lacks standing to seek judicial review of an order directing the manner in which it shall keep its accounts, and we recognize that among the matters which may properly be considered on such review is the question whether the order improperly interferes with any right of the corporation to pay dividends and of its stockholders to receive them, and with the value of its outstanding securities." This position counsel for the Commission reaffirmed in a most explicit manner at the oral argument before us.

Upon familiar principles of corporation law, whether a corporation shall institute litigation to enforce a corporate right, like other business questions, is ordinarily a matter of internal management left to the discretion of the directors in the absence of instruction by vote of the stockholders. "Courts interfere seldom to control such discretion intra vires the corporation, except where the directors are guilty of misconduct equivalent to a breach of trust, or where they stand in a dual relation which prevents an unprejudiced exercise of judgment; and, as a rule, only after application to the stockholders, unless it appears that there was no opportunity for such application, that such application would be futile (as where the wrongdoers control the corporation), or that the delay involved would defeat recovery." United Copper Securities Co. v. Amalgamated Copper Co., 1917, 244 U.S. 261, 263, 264, 37 S.Ct. 509, 510, 61 L.Ed. 1119.[2] The mere fact that the refusal of a corporation,

---

[2] This principle is embodied now in Rule 23(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. While Rule 23(b) is applica-

through its management, to engage in litigation, may result in a diminution of dividends to stockholders, does not give a stockholder standing to invoke the aid of a court of equity in overriding the judgment of the management. Hawes v. Oakland, 1881, 104 U.S. 450, 462, 26 L.Ed. 827.

■ Consistently with these principles, if the board of directors of Florida had on their own initiative, in good faith and in the exercise of their business judgment, made the accounting changes which paragraphs 2 and 4 of the Commission's order directed Florida to make, a minority stockholder would not have been heard to complain, even though such change resulted in some temporary curtailment of dividends. Whether to contest the Commission's order to this effect is equally a matter of internal corporate management committed in the first instance to the discretion of Florida's board of directors. And, of course, in circumstances like the present, American does not need the aid of a court to compel the assertion of a corporate right, because as controlling stockholder in Florida, American can cause Florida to file a petition for review of the Commission's order.

In Pittsburgh & West Virginia Ry. Co. v. United States, 1930, 281 U.S. 479, 50 S.Ct. 378, 74 L.Ed. 980, the Interstate Commerce Commission had authorized the New York Central Railroad and other rail carriers to join in establishing a union station at Cleveland through a jointly owned subsidiary. The Wheeling & Lake Erie Railroad had for some years owned and maintained its independent station at Cleveland on the approach to the union terminal. Wheeling was persuaded to sell its site and become a tenant of the new station at a comparatively low rental, and filed with the Commission an application for authorization to do so. The Pittsburgh & West Virginia Railway, a minority stockholder in Wheeling, intervened and was heard before the Commission in opposition to the plan on various grounds, one of which was that it might imperil Wheeling's financial condition. The Commission, however, approved the plan, and Pittsburgh brought suit in a three-judge district court under the Urgent Deficiencies Act of October 22, 1913, 38 Stat. 219, 220, 28 U.S.C.A. § 47, to suspend and set aside the Commission's order. The District Court denied relief on the merits; upon appeal the Supreme Court held that Pittsburgh had no standing to sue and that the bill should have been dismissed without inquiry into the merits. Justice Brandeis, speaking for the court, said, 281 U.S. at page 487, 50 S.Ct. 381, 74 L.Ed. 980: "Finally, the claim that the order threatens the Wheeling's financial stability, and consequently appellant's financial interest as a minority stockholder, is not sufficient to show a threat of the legal injury necessary to entitle it to bring a suit to set aside the order. This financial interest does not differ from that of every investor in Wheeling securities or from an investor's interest in any business transaction or lawsuit of his corporation. Unlike orders entered in cases of reorganization, and in some cases of acquisition of control of one carrier by another, the order under attack does not deal with the interests of investors. The injury feared is the indirect harm which may result to every stockholder from harm to the corporation. Such stockholder's interest is clearly insufficient to give the Pittsburgh a standing independently to institute suit to annul this order." Pittsburgh & West Virginia Ry. Co. v. United States was recently cited with approval in Boston Tow-Boat Co. v. United States, 321 U.S. 632, 64 S.Ct. 776, decided by the Supreme Court April 3, 1944. See also United Copper Securities Co. v. Amalgamated Copper Co., 1917, 244 U.S. 261, 37 S.Ct. 509, 61 L.Ed. 1119; Westmoreland Asbestos Co., Inc., v. Johns-Manville Corp., D.C.S.D.N.Y., 1939, 30 F.Supp. 389, affirmed on opinion below, 2 Cir., 1940, 113 F.2d 114; NY Pa NJ Utilities Co. v. Public Service Commission, D.C.S.D.N.Y., 1938, 23 F. Supp. 313.

■ It is true that the Urgent Deficiencies Act, under which review of the order of the Interstate Commerce Commission was sought in Pittsburgh & West Virginia Ry. Co. v. United States, does not provide, as does § 24 (a) of the Public Utility Holding Company Act, that "any person or party aggrieved" may seek a review of the administrative order, but leaves the moving party's standing to seek review to be determined upon general principles. But the phrase "any person or

ble only to district courts, we see no reason why the accepted principle, which antedated Rule 23(b), should not be applicable to review in the circuit courts of appeals under § 24(a) of the Public Utility Holding Company Act.

party aggrieved" is not one of exact meaning; and we have no reason to think that Congress thereby intended to confer upon a stockholder the independent right to seek a review of the type of administrative order, directed only against the corporation, involved in the case at bar. It may be that so far as concerns the constitutional requirement of "case" or "controversy" Congress might have power to disregard the "corporate veil", to treat the controversy as one subsisting between the Commission and the stockholders of the corporation which has been ordered by the Commission to make the accounting changes here involved, and to confer upon such stockholders the independent right, in their own names, to seek review of the Commission's order. But we think it is clear that if Congress had intended any such departure from the ordinary principles of corporation law, it would have expressed such intention in explicit language.

In applying to the case at bar the phrase "any person or party aggrieved", it is immaterial that American was a party to the administrative proceedings before the Commission. Pittsburgh & West Virginia Ry. Co. v. United States, 1930, 281 U.S. 479, 486, 50 S.Ct. 378, 74 L.Ed. 980; Alexander Sprunt & Son, Inc., v. United States, 1930, 281 U.S. 249, 254, 255, 50 S.Ct. 315, 74 L.Ed. 832. Under § 19 of the Public Utility Holding Company Act, 49 Stat. 832, 15 U.S.C.A. § 79s, the Commission has broad discretion in admitting interested persons as parties to the administrative proceedings, but it by no means follows that all persons who properly participate as interested parties in the administrative proceedings are "parties aggrieved" within the meaning of the review provisions in § 24(a). As a matter of fact, in view of the inclusive nature of the issues projected in the proceedings initiated by the Commission in the present case, American was necessarily made a party respondent, because, among other things, one of the issues raised was whether it was necessary to subordinate to publicly held securities of Florida the holdings by American of Florida's preferred stock and debentures. But so far as concerns paragraphs 2 and 4 of the Commission's order, which are the only portions of

the order now sought to be reviewed, proceedings to that end could have been instituted by the Commission against Florida alone, without joining American as a party respondent.

We shall refer briefly to some of the cases relied upon by petitioner.

In Northwestern Electric Co. v. Federal Power Commission, 1944, 321 U.S. 119 64 S.Ct. 451, the Commission made an accounting order against Northwestern Electric Company, an operating utility all of whose common shares are owned by American Power & Light Company. Northwestern filed in the proper circuit court of appeals a petition to review the order. American joined in the application for court review. Since the particular circuit court of appeals undoubtedly had jurisdiction to review the order there was no point in challenging American's standing to join in the petition, and the Commission made no such challenge. Neither in the opinion of the circuit court of appeals nor in that of the Supreme Court was there any discussion of the question whether American had an independent standing to seek review of the accounting order against the corporation of which it was the controlling stockholder.

In Federal Communications Commission v. Sanders Bros. Radio Station, 1940, 309 U.S. 470, 642, 60 S.Ct. 693, 84 L.Ed. 869, 1037, one holding a license to operate a broadcasting station, over whose objection the Commission had granted a permit for the erection of a rival station, was held to be a "person aggrieved or whose interests are adversely affected" by the decision of the Commission, within the meaning of § 402(b)(2) of the Communications Act of 1934, 48 Stat. 1064, 1093, 47 U.S.C.A. § 402(b)(2), and hence entitled to appeal from the Commission's decision to the Court of Appeals of the District of Columbia. The private economic injury which the said licensee suffered as a result of the Commission's decision was deemed sufficient to give the licensee a standing, as a sort of "private attorney general,"[3] to present questions of public interest and convenience on appeal from the order of the Commission. The court pointed out, 309 U.S. 470, at page 477, 60 S.Ct. 693, 698, 84 L.Ed. 869, that it ascribed this meaning to the flexible phrase "person

[3] See Douglas, J., dissenting, in Federal Communications Commission v. National Broadcasting Co., Inc., 1943, 319 U.S. 239, 265, note 1, 63 S.Ct. 1035, 87 L.Ed. 1374.

256

aggrieved or whose interests are adversely affected" in order to effectuate the purposes of the particular statute and because, otherwise, § 402(b)(2) would be deprived of any substantial effect. No comparable situation is presented in the case at bar. Neither in the Sanders case, supra, nor in Federal Communications Commission v. National Broadcasting Co., Inc., 1943, 319 U.S. 239, 63 S.Ct. 1035, 87 L.Ed. 1374, nor in Associated Industries, Inc., v. Ickes, 2 Cir., 1943, 134 F.2d 694, was the question presented whether a stockholder is a "person or party aggrieved" by an accounting order directed solely against the corporation, an order which the corporation is fully empowered to bring for review before the appropriate circuit court of appeals.

In Todd v. Securities and Exchange Commission, 6 Cir., 1943, 137 F.2d 475, the standing of a stockholder to seek review of a dissolution order pursuant to § 11(b)(2) of the Public Utility Holding Company Act was not challenged by the Commission, and the court's decision makes no allusion to the point.

In Okin v. Securities and Exchange Commission, 2 Cir., 1943, 137 F.2d 398, 400, a stockholder sought review of an order of the Commission granting an application by the corporation for authority to sell the securities of a wholly owned subsidiary. The stockholder had appeared before the Commission in opposition to the application, charging fraud, and after being allowed a limited participation in the hearing, he was eventually ordered by the examiner to leave the room, and upon his refusal the examiner closed the hearing. The court stated that the only question before it was "whether, as petitioner so strenuously asserts, he was denied the essentials of a fair hearing." If the stockholder was entitled to be heard before the Commission on his charges of fraud, and had been denied the essentials of a fair hearing, it may well be that he should be deemed a person aggrieved by the ensuing order of the Commission. The court after examination of the record of the administrative proceedings concluded "that no error which could possibly affect the result occurred" and affirmed the Commission's order.

Finally, the petitioner relies heavily on our decision in Lawless v. Securities and Exchange Commission, 1 Cir., 1939, 105 F.2d 574. In that case, as this court understood the Commission's order, its effect was to cast doubt upon the validity of the new common stock and common stock purchase warrants which would be issued to petitioner in pursuance of a proposed recapitalization. In such a case a minority stockholder whose rights are affected is a person aggrieved by the Commission's order within the meaning of § 24(a), and has an independent standing to seek judicial review. In so far as the language of the Lawless opinion may intimate that the petitioner was a "person or party aggrieved" merely by virtue of the fact that he had been admitted to participation in the proceedings before the Commission, we do not think that it is correct.

Respondent's motion to dismiss the petition for review is granted, and the petition is dismissed for lack of jurisdiction.