**CALIFORNIA OREGON POWER CO. v. FEDERAL POWER COMMISSION.**

No. 10429.

Circuit Court of Appeals, Ninth Circuit.

June 15, 1945.

Rehearing Denied Aug. 6, 1945.

A. Louis Flynn and Helmer Hansen, both of Chicago, Ill., and James S. Moore, Jr., of San Francisco, Cal. (Brobeck, Phleger & Harrison, of San Francisco, Cal., of counsel), for petitioner.

Charles V. Shannon, Gen. Counsel, F.P. C., Louis W. McKernan, Principal Atty., and Robert L. Russell, Atty., F.P.C., all of Washington, D.C., for respondent.

George Neuner, Atty. Gen., of Oregon, Willis S. Moore, First Asst. Atty. Gen., and Chas. W. Erskine, of Salem, Ore., for George H. Flagg, Commissioner of Public Utilities of Oregon, amicus curiae.

Before GARRECHT, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

This is a proceeding under § 313(b) of the Federal Power Act, 16 U.S.C.A. § 825*l* (b), for the review of paragraphs (1), (2) and (7) of an order of the Federal Power Commission requiring the petitioner to correct its electric plant accounts in accordance with the Commission's uniform system of accounts.

Petitioner is a subsidiary of Standard Gas & Electric Company, a holding company which owns all of petitioner's common stock and part of its preferred. It produces, distributes and sells electric energy in Northern California and Southern Oregon. The adjustments ordered are the outgrowth of a joint audit and report of the staffs of the Federal Power Commission, the Public Utilities Commissioner of Oregon, and the Railroad Commission of California.

■ Paragraph (1) of the order relates to the portion of the acquisition cost to petitioner of certain utility systems in excess of the original cost of such properties. This excess of acquisition cost—amounting to $828,684.97—was found to represent payments for intangibles such as nuisance value, monopoly value and the like, hence its capitalization was thought to be basically a capitalization of potential earning power. The amount has been classified in Account 100.5, Electric Plant Acquisition Adjustments, and the order requires its amortization by annual charges to income over a ten-year period. As to this phase of the matter, the Commission's order must be affirmed on the authority of Pacific Power & Light Co. v. Federal Power Commission, 9 Cir., 141 F.2d 602. Cf. also Northwestern Electric Co. v. Federal Power Commission, 321 U.S. 119, 64 S.Ct. 451, 88 L.Ed. 596; Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333; Colorado Interstate Gas Co. v. Federal Power Commission, 65 S.Ct. 829.

Paragraphs (2) and (7) of the order relate to an amount of $636,237.23, found to represent inter-company profits paid by petitioner to the wholly-owned service company of Standard, under a cost-plus contract in which there was a complete absence of arm's length bargaining. The amount was ordered transferred to Account 107, Electric Plant Adjustments, and petitioner was required to dispose of it by charges to surplus, either earned or capital surplus as petitioner may elect.

When petitioner came under the control of Standard it was subjected by the parent company to the so-called "fee system," accomplished by causing petitioner to enter into a management contract and an engineering contract with Byllesby Engineering & Management Corporation, a service company wholly owned by Standard. Only the engineering contract is involved here. It provided that Byllesby would perform engineering, construction, and purchasing services for which it would receive from petitioner a 7½% fee, and petitioner was further obligated to pay Byllesby a fee of not less than 7½% of the cost of such hydroelectric construction as petitioner itself might undertake. Byllesby was fully reimbursed for the cost to it of work performed under this contract, and in addition received profits of $188,942.14. On account of work done by petitioner Byllesby was paid fees of $416,896.62 in return for which Byllesby was found to have performed no services of demonstrable value.

■ In determining the actual legitimate cost of licensed projects under what is now Part I of the Federal Power Act, 16 U.S. C.A. § 791a et seq.,[1] the Commission appears uniformly to have disallowed intercompany profits paid under similar contracts; and its practice has invariably received court approval. Alabama Power Co. v. McNinch, 68 App.D.C. 132, 94 F.2d 601; Niagara Falls Power Co. v. Federal Power Commission, 2 Cir., 137 F. 2d 787; Alabama Power Co. v. Federal Power Commission, 5 Cir., 134 F.2d 602; Puget Sound Power & Light Co. v. Federal Power Commission, 78 U.S.App.D.C. 143, 137 F.2d 701; Pennsylvania Power & Light Co. v. Federal Power Commission, 3 Cir., 139 F.2d 445. The Commission's rule of "no profits to affiliates" was known to Congress prior to the adoption of the Public Utility Act of 1935, 49 Stat. 803.[2] By the 1935 Act Congress empowered the Commission to regulate interstate electric utilities and specifically authorized the agency to "investigate and ascertain the actual legitimate cost of the property of every public utility."[3] Federal Power Act, § 208, 16 U.S.C.A. § 824g. The comprehensive authority given the Commission by § 301 (a) of the Act, 16 U.S.C.A. § 825, to require the establishment of a uniform system of accounts applies equally to public utilities and to licensees.

■ The purpose of directing the as-

---

[1] Originally, the Federal Water Power Act of 1920.

[2] Consult Fourteenth Annual Report of Commission, p. 2, transmitted Dec. 1, 1934.

[3] In the 1935 Act the definition of actual legitimate original cost, as contained in the 1920 Act, was reenacted without change.

certainment of legitimate cost was not merely to enable the Commission to compile and require the recording of informative data. The aim was to eliminate the padding from utility accounts. The provision has the broad purpose of protecting the public against artificially inflated investment costs on the basis of which utility companies assert the right to a return. In the employment of devices by which write-ups were effected holding companies had been among the chief offenders. As said in Alabama Power Co. v. Federal Power Commission, supra, legitimate costs include all sums that would have been properly spent had there been only a single corporation involved, but legitimate cost does not include profits assessed by one wholly-owned corporation against another. Here, petitioner's own expert testified that accountants do not recognize as proper "the building up of charges by transfer of goods or services from one department to another within a particular accounting entity." And experts for the Commission testified to the obvious proposition that a utility company may not properly accomplish by indirection that which would be condemned if done directly. In this instance it was stipulated, in substance, that during the period involved the three companies—Standard, Byllesby and petitioner—were arms of the same enterprise, and that such was the affiliation of interest among them that to all intents and purposes they formed one corporation.

■ Petitioner contends that it was denied due process in the hearing before the Commission in that it was not given opportunity to present additional evidence with respect to the reasonableness of the fees paid to Byllesby. The record shows the contrary. Petitioner had advance knowledge of the position taken by the Commission and the two state regulatory bodies with respect to the Byllesby fees. The report served on the petitioner in June 1941 clearly disclosed the opinion of the joint stàffs that system profits are improper elements of plant costs. The hearing on the report was originally slated for a date in August 1941, but was postponed on petitioner's request a number of times for a total period of six months. When it was finally held the president of the Byllesby Company was present throughout, but was not called as a witness. We think there was no abuse of discretion in denying a further continuance. This would be true even

though a showing had been made as to the materiality of the evidence sought to be adduced. There was in fact no such showing.

■ Petitioner's motion to adduce additional evidence, made in this court, does not comply with the requirements of § 313(b) of the Act, and the motion is denied.

Affirmed.