## PENNSYLVANIA ELECTRIC CO. v. FEDERAL POWER COMMISSION.

No. 10293.

United States Court of Appeals
Third Circuit.

Argued Jan. 16, 1951.

Filed April 10, 1951.

Rehearing Denied May 28, 1951.

Knox Henderson, Philadelphia, Pa., Francis Ballard, Philadelphia, Pa. (Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., on the brief), for petitioner.

Howard E. Wahrenbrock, Washington, D. C. (Bradford Ross, General Counsel, Leonard Eesley, Abraham R. Spalter, all of Washington, D. C., on the brief), counsel for respondent.

Before GOODRICH, KALODNER and STALEY, Circuit Judges.

KALODNER, Circuit Judge.

In this proceeding, the Pennsylvania Electric Company ("Penelec") questions the jurisdiction of the Federal Power Commission and attacks the findings of the Commission on the ground that they are not supported by substantial evidence.

Penelec is a "public utility" as that term is defined by Section 201(e)[1] of the Federal Power Act. On December 1, 1949, without the prior approval of the Federal Power Commission, it acquired the properties of the Cresson Electric Company, the

---

1. "The term 'public utility' when used in this Part or in the Part next following means any person who owns or operates facilities subject to the jurisdiction of the Commission under this Part." § 201(e), as added Aug. 26, 1935, 49 Stat. 848, 16 U.S.C.A. § 824(e).

Gallitzin Electric Company, and the Hastings Electric Company, three small electric utility companies serving the boroughs of Cresson, Gallitzin, and Hastings in Pennsylvania. The facilities of these companies were used in local distribution of electricity; none of the companies owned facilities subject to the jurisdiction of the Commission, hence none was a "public utility". The agreed purchase price for the properties was $300,000, which was $163,951.86 in excess of their depreciated original cost. Penelec proposed to amortize such excess through annual charges to operating expense over a period of fifteen years, that is, "above the line" of return on capital investment.[2] The acquisitions were approved in advance by the Pennsylvania Public Utility Commission, which reserved jurisdiction, however, over the accounting to be made by Penelec to record the acquisitions in its accounts.

Following negotiations with Penelec, the Federal Power Commission, on November 29, 1949, commenced proceedings against it by issuing an order to show cause why the Commission should not assert jurisdiction under Section 203[3] of the Act, and by order secure compliance with the statutory requirements. Section 203(a) provides, in pertinent part, that "No public utility shall sell, lease, or otherwise dispose of * * * its *facilities subject to the jurisdiction of the Commission* * * * or by any means whatsoever, directly or indirectly, merge or consolidate *such facilities* or any part thereof with *those* of any other person * * * without first having secured an order of the Commission authorizing it to do so. * * *" (Emphasis supplied.)

The show cause order, in its preliminary part, specifically recited that the amortization of the excess of the purchase price over the depreciated original cost of the properties as proposed by Penelec "may adversely affect the public interest." Penelec

answered, on December 5, 1949, that it had consummated the transaction. It denied the jurisdiction of the Commission; nevertheless it participated in the Commission's hearing.

The Commission construed Section 203 (a) to apply to transactions in which a "public utility" acquires and merges its facilities subject to the jurisdiction of the Commission with electric utility facilities of other persons even though used solely for local distribution. It rejected the contention of Penelec that the facilities being acquired must also be facilities subject to the jurisdiction of the Commission. The Commission found that Penelec had violated Section 203(a) in failing to obtain its prior approval to the transaction, but expressly refused to impose a penalty upon Penelec therefor, and further refused to find that the violation was wilful, particularly because the Commission itself had previously manifested some uncertainty as to the proper construction of the Section. Instead, the Commission dealt with the transaction as it would have on timely petition for prior authorization. It found as a fact that the price paid by Penelec was excessive in the amount of $163,951.86. The Commission further found that it was necessary and appropriate to the administration of the Act that it require Penelec as a condition to retention of the properties and as proper accounting, to amortize such excess by monthly charges to income over a period of five years. Accordingly, it ordered Penelec to classify the $163,951.86 in Account 100.5, see note 2, supra, and to amortize it, as stated, by charges to Account 537, Miscellaneous Amortization, that is, "below the line". Penelec's petition for rehearing having been denied, it brought this petition for review pursuant to Section 313(b) of the Act.[4]

We are of the opinion, in the circumstances of this case that it is unneces-

2. It would classify the $163,951.86 in Account 100.5, Electric Plant Acquisition Adjustments, and amortize it through annual charges over a period of fifteen years to Account 505, Amortization of Electric Plant Acquisition Adjustments, in the operating expense section of its income statement. The Account refer-

ences are to the Federal Power Commission's Uniform System of Accounts for Public Utilities and Licensees.

3. As added Aug. 26, 1935, 49 Stat. 849, 16 U.S.C.A. § 824b.

4. As added Aug. 26, 1935, 49 Stat. 860, 16 U.S.C.A. § 825l(b).

sary to determine whether the Federal Power Commission had the right of prior approval of the purchase under Section 203(a). The reason exists in Section 301 (a)[5] of the Act. That section does not merely require the keeping of accounts by "public utilities" and authorize the Commission to make such rules and regulations relating thereto as are necessary or appropriate for the purposes of the administration of the Act. It specifically provides that, " * * * The Commission, after notice and opportunity for hearing, may determine by order the accounts in which particular outlays and receipts shall be entered, charged, or credited. * * *" The burden of proof to justify every accounting entry is placed upon its proponent, the Commission having power to suspend an entry pending submission of satisfactory proof in support of it. Accordingly, since Penelec admittedly was a "public utility", and in fact made the expenditure here involved, the Commission had the authority to require it to adjust its accounts in the manner here ordered. Northwestern Electric Co. v. Federal Power Commission, 1944, 321 U.S. 119, 64 S.Ct. 451, 88 L.Ed. 596; Pacific Power & Light Co. v. Federal Power Commission, 9 Cir., 1944, 141 F.2d 602; California Oregon Power Co. v. Federal Power Commission, 9 Cir., 1945, 150 F.2d 25, 27. It is no answer, either on constitutional or practical grounds, that a different accounting treatment may be required by the Pennsylvania Public Utility Commission, for by express provision Section 301(a) does not relieve a "public utility" from the accounting requirements established under local laws. Northwestern Electric Co. v. Federal Power Commission, supra; cf. Federal Power Commission v. East Ohio Gas Co., 1950, 338 U.S. 464, 476, 70 S.Ct. 266, 94 L.Ed. 268.

Penelec does not suggest that the order entered by the Commission is otherwise inconsistent with the Federal Power Act if the finding that the purchase price was excessive is supported by substantial evidence. We hold that the finding of excessiveness is based on substantial evidence.

Although Penelec asserts that the price of the properties reached as a result of arms-length bargaining is a proper indication of value, its own vice president testified that the physical value of the properties here involved was represented by their depreciated original cost. Penelec, however, attributes the difference between the depreciated original cost and the purchase price to the earning power of the properties, enhanced by contemplated operating economies and increased load and revenue. Nevertheless, Penelec failed to show how it expected to achieve any noteworthy operating savings. And its evidence as to increased load and revenue was not compelling, particularly since the customers of the selling companies would enjoy material rate reductions as a result of Penelec taking over, and the opportunity for growth is limited since the service area of the three companies was surrounded by the service area of Penelec. Finally, the earnings of the lessee [6] of the three companies that would now come to Penelec will be substantially, if not wholly, offset by the decrease in rates previously referred to; and, as stated by the Commission and undenied by Penelec, any increase in revenue would be offset by the necessity of nearly doubling the depreciation charges if they are to be made adequate.

The record, therefore, supports the conclusion of the Commission, that the foreseeable rate of return on the purchase price would not justify the price paid: Penelec's own exhibit,[7] a combined income statement of Penelec and the three selling companies for the year ending May 31, 1949, on a pro forma basis, disclosed a net operating revenue of $10,430.82 from the

5. As added Aug. 26, 1935, 49 Stat. 854, 16 U.S.C.A. § 825(a).

6. The stock of the Cresson, Gallitzin and Hastings electric companies was owned by Clearfield Bituminous Coal Corporation and their plants were operated by Pennsylvania Coal and Coke Corporation as lessee. Penelec delivered power to the three companies, which had no generation facilities. Apparently the power was purchased from Penelec by the lessee, which billed the three companies on some proportionate system.

7. Exhibit 12.

three companies, or a return of slightly over three percent on the $300,000 investment. Penelec's vice president agreed that this was not a fair return, and testified that he could not anticipate the time necessary to bring the rate of return to a satisfactory level.[8]

We conclude, for the reason stated, that the order of the Commission should be affirmed.

---

8. The record justifies the suggestion of the Commission, that Penelec was not throwing its money away, for if its proposed accounting method remained, its customers would eventually pay for the excess.