## Mercersburg, Lemasters & Markes Electric Co. and Harry E. Geiser, Owner, Appellant, v. The Public Service Commission et al.

*Public Service Company Law — Public Service Commission — Electric light companies—Valuation—Original cost.*

The item of original cost is but one of the factors to be considered in the determination of the value of an electric light company for rate-making purposes.

Where a valuation, as fixed by the Public Service Commission would seem to be based largely, if not entirely, upon original cost, and the result is confiscatory, the findings of the Public Service Commission are unreasonable and not in conformity with law and will be reversed.

Argued November 11, 1920. Appeal, No. 9, Oct. T., 1920, by respondent, from order and determination of the Public Service Commission, Complaint Docket Nos.

C. 1903 and C. 1901, 1918, in the case Mercersburg, Lemasters and Markes Electric Company, Harry E. Geiser, Owner, v. The Public Service Commission of the Commonwealth of Pennsylvania, and J. G. Rose et al. and J. M. Myers et al., interveners. Before ORLADY, P. J., PORTER, HEAD, TREXLER, KELLER and LINN, JJ. Reversed.

Complaint against Mercersburg, Lemasters and Markes Electric Company on account of schedule of increased rates effective February 1, 1918.

All of the complaints alleged that the new rates were unreasonable and excessive.

After hearing Rilling, commissioner, filed the report of the commission fixing the valuation of respondent's property and determining the rate thereon. In this report the commission finds, inter alia, as·follows:

The theory of the law is that the owner of a public utility is entitled to a fair return upon the used and useful property engaged in public service, the same being considered as having been dedicated to public use. The term "fair value" is relative, depending upon all the facts and circumstances surrounding the rendition of the service. Many elements must be considered by the commission in reaching a determination, but no hard and fast rule can be applied. Each utility must be considered from the conditions surrounding it. If the present property were swept out of existence and a new plant constructed to render the service now rendered by respondent, the present plant would not be reproduced, and the corresponding outlay of capital would therefore be unwarranted. The present property is used only because the owner was able to acquire it at a price far below its reproduction cost in its original form and the commission is of opinion that under the circumstances the purchase price, as fixed by the parties, plus the additions and improvements made since that time, substantially represents the fair value. The commission is

sustained in this conclusion by the fact that the owner has so carried it upon his books.

Our Supreme Court, in the Ohio Valley case, 260 Pa. 289, held:

"Then again, the reproduction cost less depreciation, may not give the present fair value of an old property, for it may not now be desirable to reproduce the old type of plant."

It is proper to recognize that where a judicious investment has been made in the utilization of an existing property to a more or less extent, a value may be created greater than the actual investment made, which should be recognized by the commission in its conclusion. The exercise of good judgment and forethought as well as the taking advantage of a situation may, and often does, result in the creation of values which, in connection with the investment itself, should be considered in arriving at a fair value.

Taking into consideration all the facts in connection with respondent's plant and the evidence adduced, and considering the extent and the character of the community served, the earning power and the prospects for future growth, and deducting a reasonable allowance for the value of the dwelling house occupied by the owner, and the automobile, the commission is of opinion that the used and useful property of respondent, upon which a fair return of 7% per annum should be computed, represents a fair value or worth of $18,500, and that sum will be used as a basis on which to compute such return.

In the first three months of 1918, of which period two months were under the present rates, the company had gross revenue of $2,038.53. On this basis it is safe to estimate that the annual gross return to respondent, under the existing rate, would be upwards of $8,000.

On account of the increased cost of materials and the character of respondent's plant, the commission will al-

low annual depreciation of 3% on the fair value of the property, as fixed by the commission.

*Errors ,assigned,* among others, were as follows:

1. The learned commission erred in the following finding:

"The property as now operated is a hydroelectric plant with a sustaining auxiliary steam plant to carry it over periods when its water supply fails. Its maximum capacity is about 75 kilowats."

2. The learned commission erred in the following finding:

"If the present property were swept out of existence and a new plant constructed to render the service now rendered by respondent, the present plant could not be reproduced, and the corresponding outlay of capital would therefore be unwarranted. The present property is used only because the owner was able to acquire it at a price far below its reproduction cost in its original form and the commission is of opinion that under the circumstances the purchase price, as fixed by the parties, plus the additions and improvements made since that time, substantially represents the fair value."

3. The learned commission erred in the following finding:

"Taking into consideration all the facts in connection with respondent's plant and the evidence adduced, and considering the extent and the character of the community served, the earning power and the prospects for future growth, and deducting a reasonable allowance for the value of the dwelling house occupied by the owner, and the automobile, the commission is of the opinion that the used and useful property of the respondent, upon which a fair return of 7% per annum should be computed, represents a fair value or worth of $18,500, and that sum will be used as a basis on which to compute such return."

*John W. Hoke* and *Ralph J. Baker,* for appellant.—If the appellant by his foresight obtained a valuable property at a low price and then by his enterprise built up the business, it is not fair to value his property on the basis of what he paid for it, and to do so amounts to a confiscation: Ben Avon Boro. v. Ohio Valley Water Co., 68 Pa. Superior Ct. 561; Beaver Valley Water Co. v. Public Service Commission, 71 Pa. Superior Ct. 43.

The valuation as fixed by the commission was unreasonable: Ben Avon Boro. v. Ohio Valley Water Co., 68 Pa. Superior Ct. 561; Beaver Valley Water Co. v. Public Service Commission, 71 Pa. Superior Ct. 43; Wilcox v. Consolidated Gas Co., 212 U. S. 19; Des Moines Gas Co. v. Des Moines, 238 U. S. 153; Knoxville v. Knoxville Water Co., 212 U. S. 1; The Minnesota Rate Cases, 230 U. S. 352.

*Charles Walter,* for appellee.

*Berne H. Evans,* counsel for the Public Service Commission.

OPINION BY HEAD, J., March 5, 1921:

As the record comes to us it presents but a single question for our consideration. It is true that as the complaint was originally filed, there was an allegation of insufficient or inadequate service by the public utility. The Public Service Commission properly dismissed the complaint in that respect because there appeared to be no substantial foundation to support it. There remains to consider the valuation placed upon the property of the appellant as a basis for rate-making purposes. It is alleged the valuation fixed by the commission was not supported by any evidence; was against the weight of the evidence produced before the commission and that it results in a practical confiscation of the appellant's property, in part at least.

The appellant is the sole owner of a property dedicated to the public service. He operates under the name Mercersburg, Lemasters and Markes Electric Company. The purpose of the utility is the furnishing of electric light or power, or both, to the public residing in two villages and one borough indicated by the name under which appellant operates. From the record it appears the appellant is an educated and competent electrical engineeer, with many years' experience in the service of other persons or corporations. When he saw what he thought to be a favorable opportunity for investing such moneys as he had or could control, in the purchase of a plant that could be operated with water power during a considerable portion of the year, and with an auxiliary steam plant during the remainder of the year, he purchased the property he now owns. He has been operating it for several years. The public served by his plant in the borough and two villages named aggregates about two thousand people. As already stated, the service furnished has been found to be reasonably adequate to the requirements of that public. About the end of December, 1917, this utility filed with the Public Service Commission a new schedule of rates to become effective on February 1, 1918. A few of the citizens affected thereby filed a complaint before the Public Service Commission before the proposed rates had become effective, complaining they were unjust, unreasonable, etc. When the hearing came on manifestly the burden was upon the utility company to establish, by the preponderance of proof, that the proposed increase in rates was reasonable. Passing by that portion of the testimony attempting to support the allegation in the complaint that the service was inadequate—which allegation was dismissed by the commission—and turning our attention to the testimony taken for the purpose of enabling the commission to ascertain the fair present value of the property, used and useful for public purposes, we find it to be limited in quantity and reducible to a very brief state-

ment of its substance. The appellant, the owner of the
property was called as a witness. He amply qualified
himself to testify as to the value of the property in ques-
tion. There is no evidence at all questioning his com-
petency as a witness or his qualification to make a just
valuation of the utility and the various items composing
it that he owned. Of course he was an interested party.
His report is not an arbitrary guess by way of a lump
sum as to the total value of the utility he operates. He
gives to the commission, as part of his sworn testimony,
a detailed itemized statement of all of the property of
every kind and description used by the utility, with valu-
ations as to each item aggregating something more than
$34,000. His cross-examination by counsel for the inter-
veners in no way weakens or disturbs these valuations.
As a result of an arrangement, apparently agreed to by
all parties in interest made at an earlier stage of the
case, the commission had its own engineers go over the
property in detail and present a summary of their find-
ings, in the nature of a report, as to the cost of reproduc-
tion. Their engineer, Mr. Heyser, was called as a wit-
ness and testified to the facts upon which his report was
based. That report, made to the commission by its own
engineer from an independent and disinterested exami-
nation of the property, disclosed that the reproduction
cost new of the property would be about $59,000. Of
course that new property would not be just what is now
owned by the appellant. It would be necessary to allow
a very considerable measure of depreciation in order to
approximately bring the value of the reproduced plant
new, to the fair present value of the property as it
exists. Accordingly the commission's own engineer al-
lowed for that purpose something more than $13,000;
and thus reached the conclusion that the fair present
value of the property, on the reproduction cost basis,
would be about $45,000. These were the only two wit-
nesses called before the commission to testify as to the
fair present value of the property. Now the commission

reached the conclusion that such value was $18,500 and used that valuation for a basis to fix rates to be thereafter charged to the public. Upon what testimony does that valuation rest? Manifestly not upon any appearing in the record offered for the purpose of reaching the only conclusion that should be aimed at by the commission, to wit: the ascertainment of the present fair value of the property devoted to the public service and used and useful for that purpose. All that is left in the record in addition to the testimony of the two witnesses we have referred to, is the evidence of original cost of the property to the present owner, which may fairly be gathered from his own testimony. The course of the examination and cross-examination of the witness rather clearly indicates that both the learned counsel for the intervener and the commissioner who heard the case, overestimated the probative value of the facts, as to original cost, in reaching a conclusion as to the present fair value of the property.

When the Commonwealth, or the duly authorized donee of its power of eminent domain, actually takes over, or injures or destroys private property because of public necessity, the measure of damages of the owner of the property is obtained by well established rules. Among the items of evidence, relevant and useful to enable a jury to measure those damages, it has not been considered that the original cost of the property to the then owner could or should be considered of much if of any importance. A man may acquire property by inheritance or by gift, so that it costs him nothing. That fact can scarcely be considered relevant in a proceeding to ascertain its value at the time it was taken, injured or destroyed. So when the Commonwealth, acting through its agent, the Public Service Commission, undertakes to fix a value upon private property, for the purpose of ascertaining its just rental or usable value, it seems to us to be plain that too much consideration of the element of original cost is just as likely to mislead an ad-

ministrative tribunal as a jury. It is true according to the evidence that the appellant only traced about $14,000 into the money cost of the property as he bought it and the considerable improvements he made upon it. Why allow him more than that? And if more, why allow him only $18,500 instead of $25,000 or some other sum? In a word it seems to us, and we can view it no other way from the record, that the valuation fixed by the commission was a purely arbitrary one. It might as well have been a few thousand dollars more or been confined to the original cost of the property plus legal interest thereon, less any amount that had been received from the rates for service. Why say, considering the isolated location of this plant, that a dwelling house for the superintendent or manager was not a reasonable accessory of the plant? Why declare, considering the miles of wires and the number of poles, etc., constituting the equipment of this plant, that an inexpensive automobile was not a reasonable and proper tool, implement or accessory of the public service?

But without further elaborating, it seems to us to be sufficient to say that, in the unanimous judgment of this court, the Public Service Commission, proceeding upon an entirely erroneous theory, in an endeavor to reach a proper basis for the valuation of this plant for rate-making purposes, must have rested its findings largely, if not entirely, upon an undue consideration of original cost. We are of the opinion the practical result of the order or decree entered by the commission would be a confiscation, in part at least, of the appellant's property and this without, as far as we can see, any very substantial reason, even from the standpoint of the interveners. There is no evidence in the record that any individual is being oppressed by an undue charge for the service he receives from this utility. If the individual citizen unfortunately is compelled in these times to pay more than he did for everything he necessarily consumes, it should not be a subject of wonder that he must pay some-

thing more for his electric light than he did when wages were low, coal was cheap, etc.

These considerations and others that could readily be adduced lead all of us to the conclusion that the utility company furnished satisfactory reasons for the increase in the rates proposed in its new schedule, and that the Public Service Commission was in error in entertaining the complaint and ordering the utility company to modify and reduce its schedule to the extent and in the manner indicated in the order.

The order and determination of the commission are now reversed and the record remitted to the commission with direction to dismiss the complaint.    The costs of this appeal to be paid by the intervening appellees.