Scranton-Spring Brook Water Service Company, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued April 14, 1949. Before RHODES, P. J., HIRT, RENO, DITHRICH, ARNOLD and FINE, JJ. (ROSS, J., absent).

*Douglas D. Storey*, with him *Herman J. Goldberg* and *Storey & Bailey*, for appellant.

*Arthur J. Diskin* and *Charles E. Thomas*, for appellee.

OPINION BY RHODES, P. J., July 15, 1949:

This is an appeal by the Scranton-Spring Brook Water Service Company from the order of the Pennsylvania Public Utility Commission entered January 5, 1948. The order prescribes a Uniform System of Accounts for Water Utilities having annual operating revenues in excess of $100,000, and directs all such utilities, including appellant, to keep their accounts in accordance with such uniform system.

The Uniform System of Accounts here in question was established by the Commission under the statutory authority given in sections 501 and 502 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §§1211, 1212. Section 501 provides: "The commission may, after reasonable notice and hearing, establish systems of accounts (including cost finding procedures) to be kept

by public utilities, or may classify public utilities and establish a system of accounts for each class, and prescribe the manner and form in which such accounts shall be kept. Every public utility shall establish such systems of accounting, and shall keep such accounts in the manner and form required by the commission. The accounting system of any public utility also subject to the jurisdiction of a Federal regulatory body shall correspond, as far as practicable, to the system prescribed by such Federal regulatory body: Provided, That the commission may require any such public utility to keep and maintain supplemental or additional accounts to those required by any such regulatory body." Section 502 reads: "The commission may require any public utility to establish, provide, and maintain as a part of its system of accounts, continuing property records, including a list or inventory of all the units of tangible property used or useful in the public service, showing the current location of such property units by definite reference to the specific land parcels upon which such units are located or stored; and the commission may require any public utility to keep accounts and records in such manner as to show, currently, the original cost of such property when first devoted to the public service, and the reserve accumulated to provide for the depreciation thereof."

The order of the Commission setting up the new system of accounts for the larger water utilities recites in detail the reasons for the change. Prior to January 1, 1948, water utilities were required to account for water supply plant and facilities on the basis of cost to the present owner or book cost. This method of accounting was deficient in failing to disclose one of the elements of fair value, original cost, or cost to the owner first devoting the property to public service. The Commission's experience showed that in most cases involving water utilities original cost data was entirely lacking

due to the age of such companies or to their manner of keeping accounts. Many utilities adjusted their plant accounts to reflect reproduction cost. Under these circumstances, the ascertainment of original cost by the Commission itself in a given rate proceeding. was impractical. Accordingly the Uniform System of Accounts was prescribed with a view to making original cost data readily available. The new system also provided for continuing cost inventory of plant acquisitions as made.

The initial draft of the new system of accounts relating to water utilities having annual operating revenues in excess of $100,000 was completed in January, 1946, and served upon all such utilities. This initial draft provided that the original cost of the utility plant and facilities would be obtained by analysis of construction records. Representatives of the water supply industry claimed that data as to construction costs was largely nonexistent as many companies had been in operation for decades, and as little importance had been attached to proper accounting methods in the early years. The Commission recognized the merits of this contention, and in the second draft of its new system of accounting for large water utilities it made the following provision:

"In recognition of the history of water utility plant, it will be considered that book costs of plant, as of the date of reclassification of plant account, are representative of the original cost thereof, after adjustments shall have been made to such book costs for increases or decreases in plant account of the accounting utility and its predecessors which resulted from the recording of appraised values, from the acquisition of plant by purchase, merger, consolidation, etc., or from accounting errors, due consideration being given to recorded retirements, if any, of the gross amounts classifiable in account 100-5, Utility Plant Acquisition Adjustments and account 107, Utility Plant Adjustments."

The second and final draft of the proposed new accounting system was served upon all water utilities subject to the jurisdiction of the Commission and affected thereby on December 3, 1946. Hearings were held in July and September of 1947 and briefs filed. Scranton-Spring Brook Water Service Company asserted that the new regulations would adversely affect it. The new accounting rules were made effective as of January 1, 1948, by the Commission's final order of January 5, 1948, from which order Scranton-Spring Brook Water Service Company appeals.

The Commission has prescribed new uniform systems of accounts for the larger gas, electric, and telephone utilities, containing substantially similar provisions and requiring the accounting systems of these utilities to reflect original cost. It does not appear that any appeal has been taken concerning these orders of the Commission. Of the water companies affected, Scranton-Spring Brook has appealed, but it has not appealed from the Commission's order setting up similar accounting requirements for artificial gas producers, in which enterprise it is likewise engaged.

The Uniform System of Accounts in question, in Account 100-1 (Utility Plant in Service), provides for the inclusion of the balance showing the original cost of the utility plant in service. Intermediate Accounts 100-2 to 100-4 cover the original cost of plant leased to others, construction work in progress, and plant held for future use. Account 100-5, known as the Acquisition Adjustment Account, shall include "the difference between (a) the arm's-length cost of utility plant acquired by purchase, merger, consolidation, liquidation or otherwise and (b) the original cost, estimated if not known, of such property, less the amount or amounts which may be credited to the depreciation and amortization reserves of the accounting utility at the time of

acquisition with respect to such property." Appellant especially objects to paragraph C. of Account 100-5 which reads in full as follows: "C. The amounts recorded in this account with respect to each property acquisition, shall be depreciated, amortized or otherwise disposed of as the Commission may approve or direct."

It appears from the record that the actual arm's length cost of acquiring the various properties, now constituting appellant, by merger and reissuance of securities, was $51,692,982.94, or, for present purposes, approximately $52,000,000. It is estimated that of this $52,000,000 the sum of $33,779,000 would represent original costs of such property when first devoted to the public service, and $18,221,000 would represent the difference between arm's-length cost and original cost, which would be recorded under Account 100-5. Appellant contends that the new system of accounting violates the Constitution of the Commonwealth of Pennsylvania (Article I, §§1, 9, 10, Article XVI, §10), as applied to it, because, under this system, "Appellant is compelled to write off about $18,221,000 of said [the actual] cost from its plant account and to amortize or otherwise dispose of said $18,221,000 as the Commission directs."

The general power of state and federal commissions to prescribe reasonable uniform systems of accounting for utilities subject to their jurisdiction is clear. *Northwestern Electric Co. v. Federal Power Commission*, 125 F. 2d 882, affirmed 321 U. S. 119, 64 S. Ct. 451, 88 L. Ed. 596; *Kansas City Southern R. Co. v. United States*, 231 U. S. 423, 34 S. Ct. 125, 58 L. Ed. 296; *Norfolk & Western R. Co. v. United States*, 287 U. S. 134, 53 S. Ct. 52, 77 L. Ed. 218; *American Telephone & Telegraph Co. v. United States*, 299 U. S. 232, 57 S. Ct. 170, 81 L. Ed. 142. The Uniform System of Accounts, requiring the utility to have available original cost figures, prescribed by the Pennsylvania Commission

and the basis of the present appeal, is similar to and based upon previous state and federal regulation.[1]

In *American Telephone & Telegraph Co. v. United States,* supra, 299 U. S. 232, 57 S. Ct. 170, 81 L. Ed. 142, the uniform system of accounts prescribed by the Federal Communications Commission for telephone companies under its jurisdiction, as here, required that the difference between original cost of the property, when first dedicated to public use, and the book or present cost be listed in an acquisition adjustment account. It was further provided that " 'the amounts recorded in this account [i. e. 100.4] with respect to each property acquisition shall be disposed of, written off, or provision shall be made for the amortization thereof in such manner as this Commission may direct.' " (page 238 of 299 U. S., page 148 of 81 L. Ed.) In that case the Federal Communications Commission "stipulated" that " 'amounts included in [acquisition adjustment] account 100.4 that are deemed, after a fair consideration of all the circumstances, to represent an investment which the accounting company has made in assets of continuing value will be retained in that account until such assets cease to exist or are retired; and, in accordance with paragraph (C) of account 100.4, provision will be made for their amortization.' " (page 241 of 299 U. S., page 150 of 81 L. Ed.) In upholding the validity of such uniform system of accounts, including the write-off provision, Mr. Justice CARDOZO said (pages 240, 241 of 299 U. S., pages 149, 150 of 81 L. Ed.) : "The Commission is not under a duty to write off the whole or any part of the balance in 100.4, if the difference between original and present cost is a true increment of value. On the contrary, only such amount will be written off as ap-

---

[1] See: A Case Study in the Relationship of Law and Accounting: Uniform Accounts 100.5 and 107, by Homer Kripke, 57 Harvard Law Review, 433-478, 693-727.

pears, upon an application for appropriate directions, to be a fictitious or paper increment. This is made clear, if it might otherwise be doubtful, by administrative construction. . . . The case in that respect is sharply distinguished from New York Edison Co. v. Maltbie, 244 App. Div. 685, 281 N. Y. S. 223; id., 271 N. Y. 103, 2 N. E. (2d) 277, where under rules prescribed by the Public Service Commission of New York, there was an inflexible requirement that an account similar in some aspects to 100.4 be written off in its entirety out of surplus, whether the value there recorded was genuine or false. The administrative construction now affixed to the contested order devitalizes the objection that the difference between present value and original cost is withdrawn from recognition as a legitimate investment." Furthermore, it is clear from the opinion in *United States v. New York Telephone Co.*, 326 U. S. 638, 652-654, 66 S. Ct. 393, 90 L. Ed. 371, 380-381, that the validity of the order of the Federal Communications Commission installing the Uniform System of Accounts, including the possible write-off provision found in paragraph (C) of section 100.4, was not dependent upon the "stipulation" by the Commission in *American Telephone & Telegraph Co. v. United States,* supra. The decisions in *American Telephone & Telegraph Co. v. United States,* supra, and *United States v. New York Telephone Co.,* supra, fully sustain the power of the Commission in the present case to order the appellant and other utilities subject to its jurisdiction to keep uniform accounts as directed in the order. We are not now concerned with the power of the Commission to require the utility to write off any part of the amounts recorded in Account 100.5. In the event that any write-off orders are made in the future, this appellant, or any other utility affected, will have ample opportunity to question such orders.

There is no merit in appellant's contention that the new system of accounts can be applied only "prospec-

tively," that is, to show the original cost of property first devoted to public use after the date of the Commission's accounting order. Such application would defeat the major purpose of the accounting order.

The Commission's accounting order does not impair the credit of the utility or affect the value of its stock. The Uniform System of Accounts takes into consideration and discloses proper elements of value. The requirement that the utility separate on its books original cost from book or acquisition cost does not change any element of value or take any of the property of the utility in violation of its rights under either the Constitution of the Commonwealth of Pennsylvania or the Constitution of the United States.

Appellant's argument that the Commission approved a valuation on its property of $52,000,000 in 1928, and cannot now reduce such valuation to an original cost basis, is fallacious. This argument assumes the present order of the Commission is more than an accounting order, and that the utility is being compelled to write off part of its cost. The present order of the Commission is one prescribing a system of accounts. It is not a rate proceeding, and involves no findings as to value.

Appellant's witness before the Commission estimated that it would cost appellant $228,694 to comply with the Commission's order even under the short "ceiling approach" to original cost provided for in the Commission's second draft of the new uniform system. The Commission stated it believed the cost to appellant of installing the new system would be "substantially less than its estimate." Appellant has not shown that the cost would be arbitrary or unreasonable under the circumstances, and we find no merit in this objection to the order. Cf. *American Telephone & Telegraph Co. v. United States*, supra.

We have said recently that original cost of construction is a proper factor to be considered by the Com-

mission in arriving at a fair value of the property of a utility for rate making purposes. *Equitable Gas Co. v. Pennsylvania Public Utility Commission,* 160 Pa. Superior Ct. 458, 463-465, 51 A. 2d 497. We have no doubt that the term "original cost" or "original cost of construction" as here used is equivalent to "the original cost of such property when first devoted to the public service" under section 502, and that original cost does not mean cost to the present owner as appellant contends. In section 310 (a) of the Public Utility Law of 1937, 66 PS §1150 (a), reference is made to original cost of the physical property of the utility when first devoted to public use. The Public Service Company Law of July 26, 1913, P. L. 1374, §20 (a), in defining the elements of fair value, included "the original cost of construction" of the company's property, and such original cost did not include increase in market value due to merger, sale, or consolidation. Cf. *Beaver Valley Water Co. v. Public Service Commission,* 76 Pa. Superior Ct. 255, 259. Under appellant's view, original cost would be synonymous with book cost or cost to the present owner. Of course this is not necessarily true.

The order of the Commission is affirmed, at appellant's cost.