## Scranton, Appellant, *v.* Scranton Steam Heat Company.

Argued September 27, 1961. Before BELL, C. J., MUSMANNO, JONES, COHEN and EAGEN, JJ.

re-argument refused January 8, 1962.

*Miles Warner,* Assistant Counsel, with him *Louis J. Carter,* Assistant Counsel, and *Joseph I. Lewis,* Chief Counsel, for Pennsylvania Public Utility Commission, appellant.

*Morey M. Myers,* with him *James W. McNulty,* for City of Scranton, appellant.

*Anthony C. Falvello,* with him *Rocco C. Falvello, James E. Riely,* and *Creskoff, Riely & Holton,* for utility company, appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, November 14, 1961:

These appeals are from a judgment of the Superior Court which reversed a Pennsylvania Public Utility Commission (Commission) order entered in a rate case.

On April 28, 1959, Scranton Steam Heat Company (Company) filed with the Commission a supplement to its steam heat tariff, to become effective July 1, 1959,

which supplement provided for increases in the Company's base rates for steam heat service. To these proposed rate increases the City of Scranton (Scranton) and one Harry Klein (Klein), a consumer, filed complaints. The Commission, pending disposition of these complaints, suspended the effective date of the proposed rate increases,[1] held hearings and on April 28, 1960 the Commission sustained the complaints and directed the Company to cancel its steam heat tariff supplement. The reversal of that order by the Superior Court is challenged on these appeals.

The factual background is relatively simple. The plant for furnishing *both* electric service and steam heat service was constructed by the Scranton Electric Company (Electric) in 1894. On January 31, 1956, Pennsylvania Power & Light Company (Power & Light) acquired this plant from Electric. On September 26, 1956, the Company acquired the steam heat service facilities of the plant from Power & Light for $250,000. The property acquired consisted of (a) a production system[2] used by Electric and Power & Light both to produce steam used in the generation of electricity *and* to supply steam heat; (b) a distribution system;[3] (c) general property,[4] (b) and (c) being employed *exclusively* in steam heat service. As found by the Commission upon sufficient evidence, Power and Light did not need in 1956 the production system to generate steam for electricity and it offered for sale *only* that portion of the production system used and useful in supplying steam heat service plus the distribution system and general property.

---

[1] Scranton argues that the proposed rate increases vary from 30% to 47%. An examination of the record indicates that the overall increase is approximately 20.16%.

[2] Boiler plant and related structures.

[3] Steam mains, meters, etc.

[4] Office equipment, trucks, etc.

In 1953, Electric had applied for rate increases and, at that time, the Commission found that 60% of the production system was devoted to electric service and 40% devoted to steam heat service and, in fixing the electric and steam heat base, such allocation of use of the production system was employed by the Commission (*Pa. P.U.C. v. Scranton Electric Company,* 31 Pa. P.U.C. 650, 658, 660) and the steam distribution system and general property were included exclusively in the steam heat rate base and not in the electric rate base. It is clear beyond question that Power & Light sold and the Company purchased in 1956 *only* that portion of the property used and useful in the supplying of steam heat service.

One narrow issue is presented on this appeal: whether the Commission's order which fixed the "fair value" of the Company's property on the sole basis of the acquisition cost in 1956 and the allowance for annual depreciation is legally sustainable?

The Commission fixed the "fair value" of the Company's property at $900,000. In so doing, it aggregated the (1) acquisition or purchase price of the plant of $250,000; (2) organization expenses of $5,257; (3) net plant additions of $357,655 from the date of purchase to the end of the test year on February 28, 1959,[5]—a total of $612,913. From this total, the Commission deducted (1) depreciation on the plant accrued since the date of purchase, $73,500, said depreciation being determined by the straight-line remainder life method.[6] To the net total of $539,413—$612,912 less $73,500—the Commission allowed $230,000 for materials and supplies,[7] for a total of $769,413. Giving "consideration

---

[5] (2) and (3) are not questioned on this appeal.

[6] Appellee questions the amount of accrued depreciation in the sense that its figure for accrued depreciation, based on an undepreciated original cost of $4,003,716, is larger.

[7] Not questioned on this appeal.

to the decline in value of the dollar in addition to recognizing that [the Company] is a going concern", the Commission added an additional $130,587 for a total "fair value" of $900,000.

The Company offered evidence of three measures of value:[8] (1) original cost—$2,200,000; (2) reproduction cost at spot prices—$5,772,000; (3) reproduction cost at five year average prices—$5,074,000 as evidence of "fair value".

More than half a century ago it was held that "the basis of all calculations as to the reasonableness of rates to be charged . . . must be the fair value of the property being used by it for the convenience of the public. . . . What the company is entitled to ask is a fair return upon the value of that which it employs for the public convenience": *Smyth v. Ames*, 169 U. S. 466; *Pittsburgh v. Pa. P. U. C.*, 187 Pa. Superior Ct. 341, 144 A. 2d 648; *Pittsburgh et al. v. Pa. P. U. C.*, 158 Pa. Superior Ct. 229, 44 A. 2d 614; *Solar Electric Company v. Pa. P. U. C.*, 137 Pa. Superior Ct. 325, 9 A. 2d 447; Public Utility Law of May 28, 1937, P. L. 1053, §311, 66 PS §1151.

In *Pittsburgh v. Pa. P. U. C.*, 187 Pa. Superior Ct. 341, 349, 144 A. 2d 648, the Court recognized the rule which for decades has been the law in Pennsylvania: "Fair value for rate-making purposes, however, is not the literal present fair value for any particular purpose, but it is the fair value of the property as that term is understood for rate-making purposes; in this respect, fair value has a connotation peculiar to rate proceedings. There is no particular formula by which the Commission is bound in fixing the rate base; all facts which have a relevant bearing on fair value, as that term is used in rate proceedings, should be considered . . . 'Under the fair value rule prevailing in this

---

[8] As modified by certain disallowances made by the Commission.

state, consideration should be given to original cost and *average price* reproduction cost of the property; . . .' "

Original cost means original cost of construction of the facilities and is a factor which *must* be considered by the Commission in arriving at the "fair value" for rate making purposes: *Harrisburg Steel Corp. v. Pa. P. U. C.*, 176 Pa. Superior Ct. 550, 109 A. 2d 719; *Pittsburgh v. Pa. P. U. C.*, 171 Pa. Superior Ct. 391, 90 A. 2d 850; *Scranton-Spring Brook Water Service Co. v. Pa. P. U. C.*, 165 Pa. Superior Ct. 286, 67 A. 2d 735; *Solar Electric Company v. Pa. P. U. C.*, 137 Pa. Superior Ct. 325, 9 A. 2d 447; *Peoples Natural Gas Co. v. Pa. P. U. C.*, 153 Pa. Superior Ct. 475, 34 A. 2d 375. In addition, reproduction cost of a utility's facilities is a factor which *must* be considered and weighed by the Commission in arriving at "fair value": *Pittsburgh v. Pa. P. U. C.*, supra; *Pittsburgh v. Pa. P. U. C.*, 171 Pa. Superior Ct. 187, 90 A. 2d 607; *Riverton Consolidated Water Co. v. Pa. P. U. C.*, 186 Pa. Superior Ct. 1, 140 A. 2d 114; *Solar Electric Company v. Pa. P. U. C.*, supra. The only reason for according little or no weight to the cost of reproduction is where the facilities have become so obsolete as to make highly improbable and unlikely the facilities' reproduction: *Philadelphia v. Pa. P. U. C.*, 173 Pa. Superior Ct. 38, 95 A. 2d 244. The instant record reveals no reason for the application of this exception.

In the case at bar, the Commission acknowledged that "long-accepted law and precedent" required consideration of both original cost and reproduction cost, but nevertheless rejected both original cost and reproduction cost and placed its determination solely and frankly on acquisition cost alone, i.e., that which the Company had paid for the property in 1956. Acquisition cost is not and never has been in Pennsylvania the criterion of "fair value" or a substitute for either or both the factors of original cost of construction or

reproduction cost: *Harrisburg Steel Corp. v. Pa. P. U. C.*, 176 Pa. Superior Ct. 550, 109 A. 2d 719; *Peoples Natural Gas Company v. Pa. P. U. C.*, 153 Pa. Superior Ct. 475, 34 A. 2d 375; *Mercersburg Electric Co. v. P. S. C.*, 76 Pa. Superior Ct. 58. In *Harrisburg*, supra, p. 556, it was stated: "The amount paid by the Company in acquiring the utilities, even if it be assumed that the transactions were at arms length, cannot be adopted as original cost for rate making purposes." The Commission itself in the past has recognized this principle: *Pa. P. U. C. v. Yablonski*, 29 Pa. P. U. C. 509; *Pfeifle v. Pa. Power & Light Co.*, 25 Pa. P. U. C. 52; *City of York v. York Bus Co.*, 32 Pa. P. U. C. 665.

The reason assigned by the Commission for its complete disregard of the decisional law of long standing was that the production system was constructed for a dual use, i.e., primarily, the generation of steam for electricity and, secondarily, for steam heat service, and when the use of the system for the generation of electricity was abandoned and devoted only to steam heat service, the price for which the property was acquired was the "fair value . . . for the limited use and service to which it would or could be devoted thereafter." Such reason finds support neither legally nor factually and furnishes no justification for completely ignoring both the original cost of construction and the cost of reproduction of the utilities devoted exclusively to steam heat service. The Commission order was erroneous both as a matter of law as well as of fact.

Before the Superior Court, complaint was made that the Commission erred in failing to base its allowance for annual depreciation upon the original cost of construction. What the Commission actually did was to calculate annual depreciation upon the actual plant investment as found by the Commission, i.e., acquisition cost plus organization expense plus net plant addi-

tions or a total of $612,914. The Company, for the purpose of this appeal, does not quarrel with the method of calculating annual depreciation employed by the Commission but rather claims that the annual depreciation should have been based on the original cost of construction. Since the determination of this question depends upon what was the original cost of construction as a factor in determining "fair value", final determination of the amount of annual depreciation must await the Commission's action mandated by us to consider the original cost of construction in determining the fair rate base in this case.

The Commission's order herein is palpably erroneous and the Superior Court was eminently correct in reversing that order. However, the judgment of the Superior Court remanded the record to the Commission "for the entry of an appropriate order not inconsistent with this [the majority] opinion" of the Superior Court. Such a judgment in our view is inappropriate; the Commission should be given an opportunity to reevaluate the entire record in the light of both the majority opinion of the Superior Court and this Court.

To that end, the judgment of the Superior Court is affirmed with the modification that the record be remanded to the Commission so that it may reconsider the entire record and enter an appropriate order.

Justice ALPERN took no part in the consideration or decision of this case.

———

DISSENTING OPINION BY MR. JUSTICE COHEN:

Historically, all of the steam heating companies in the Commonwealth of Pennsylvania were originally formed for the utilization of the by-products of some other endeavor. Here, the steam heating company utilized the by-product of a plant previously devoted

primarily to the generation of electricity. Very few (if any) instances exist where a plant was originally devoted solely to the production of steam for a steam heating utility. Since this formerly was a by-product plant which is now for the first time solely devoted to the production of steam, the Commission's treatment of this utility's plant as an original acquisition with no historical original cost and with a reproduction cost evidenced only by the arm's length acquisition cost is justified. The employment of any other concept in arriving at fair value under these facts, requires that we resort to fantastic, unrealistic and uneconomical valuations.

I agree with Judge WRIGHT of the Superior Court that, under the peculiar circumstances in this case, the Commission was correct "in treating the purchase price as a separate and independent measure of value and according predominant weight to it." I cannot believe that a publicly owned utility, such as the Pennsylvania Power & Light Company, would have disposed of these assets to the detriment of its shareholders were it not convinced that the sale price of $250,000 adequately represented its true value at the time of disposition. The Pennsylvania Power & Light Company could not conceive that as a steam heating plant alone the fair value for rate purposes would be determined by such egregious formulae as original cost and reproduction cost. The Pennsylvania Power & Light Company knew the true and fair value of the steam plant facilities devoted to the service of steam heating customers and, apparently being satisfied with the rate of return, did not seek increased rates for the services now under consideration. These fantastic and unrealistic values of original cost and reproduction cost should on remand be given only passing consideration by the Commission. I feel, under the circumstances of this case, the Commission was justified in ignoring them completely.

Hence, I would reverse the action of the Superior Court and affirm the order of the Commission.

Mr. Justice EAGEN joins in this dissenting opinion.