Octoraro Water Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued June 7, 1978, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS, BLATT and DISALLE.

W. *Russel Hoerner,* with him of counsel, *Morgan, Lewis & Bockius,* for petitioner.

*Melville G. M. Walwyn,* Assistant Counsel, with him *Daniel F. Joella,* Assistant Counsel, and *Barnett Satinsky,* Chief Counsel, for respondent.

OPINION BY JUDGE CRUMLISH, JR., September 29, 1978:

Octoraro Water Company (Appellant) appeals the order of the Pennsylvania Public Utility Commission (PUC) promulgated on December 19, 1976, R.I.D. No. 292, granting it an increase in its annual operating revenues of $23,838 by way of a second stage tariff supplement.[1] Appellant had requested additional revenues of $129,166. We set aside this order and remand these proceedings to the PUC because, as we said in, a similar case, viz, *West Penn Power Company v. Pennsylvania Public Utility Commission,* 33 Pa. Commonwealth Ct. 403, 406, 381 A.2d 1337, 1339 (1978):

> [T]he want of adequate discussion and critical findings of fact leading to the conclusion does not enable us to perform our judicial role. To pass upon the merits of these appeals on the

---

[1] A first stage tariff supplement, not here at issue, had been already approved by the PUC.

present record before us would cast us in the role of making an independent judgment on the merits based upon the whole record before us, a role not given to us by law nor one which we are qualified to assume.

PUC's findings of fair value and fair rate of return were totally conclusionary and unsupported by any factual finding or meaningful reasoning. PUC determined the fair value of Appellant's utilities to be $1,970,000. The original cost thereof was $1,751,377. Thus, the fair value was found to be only 111% of its original cost. The trended original costs[2] or reproduction costs of Appellant's property varied, depending upon the precise method used, from approximately $6,100,000 to $5,200,000.[3] There was no testimony to the contrary and these figures seem to have been accepted as correct by the PUC. The sum total of PUC's discussion leading to their conclusion of fair value is contained in the following paragraph of their order:

In consideration of the foregoing, and taking into account our comments in previous sections of this Order, all based on thorough investigations, analyses, and testing of data, we find and determine for the purpose of these proceed-

---

[2] Trended original costs are a method of determining the reproduction cost of the property.

[3] In *Pennsylvania Public Utility Commission v. Pennsylvania Gas and Water Co.*, 19 Pa. Commonwealth Ct. 214, 230, 341 A.2d 237, 249 (1975), we held that:

From our reading of the Act, we are certain only that the sole use of original cost statistics or the sole use of reproduction costs statistics would violate the legislative intent. We have no doubt that the Legislature intended an averaging process somewhere between the two extremes, and, so long as the fair value set by the PUC is not below or above those two extremes, or arbitrarily set so close to either extreme that we can discern a capricious disregard of the evidence or the law, we will not interfere.

ings, the fair value of respondent's property used and useful in public service at June 30, 1975 to be $1,970,000.

The "foregoing" referred to above was a statement to the effect that PUC should exercise its reasonable judgment in setting fair value giving consideration to original cost and the average reproduction cost. Their "comments in previous sections" were nothing more than statements indicating general acceptance[4] of the values supplied by Appellant. The mere statement that the PUC has investigated, analyzed and tested the data supplied to it is not an adequate substitute for actually setting forth the basis of its deliberation. Without such information, this Court cannot review the propriety of its determination.

In a similar case, *Pennsylvania Gas and Water Company-Water Division v. Pennsylvania Public Utility Commission,* 33 Pa. Commonwealth Ct. 143, 381 A.2d 996 (1977), we overruled a determination by the PUC which set the fair value of a utility at 121% of its original cost. In reviewing that case, we wrote:

[W]e decline to conclude that *this figure alone* establishes an abuse of discretion per se, because there may exist a situation, however improbable, in which stability of prices for materials, increased labor productivity, enhanced technological efficiency, or some combination thereof would make reproduction cost sufficiently low that a reasonable fair value figure may exceed net original cost by a lesser percentage. Where, however, there is no direct evidence in the record of such a low reproduction cost and no evidence suggesting the presence of the listed eco-

[4] Certain insignificant changes in the figures supplied by Appellant were made.

nomic factors even approaching the extent necessary to produce such a low ratio of fair value to net original cost, the conclusion becomes inescapable that the PUC arbitrarily and capriciously ignored the evidence or its duty under the law in setting fair value. (Emphasis in original.)

33 Pa. Commonwealth Ct. at 151, 381 A.2d at 1000-1001.

The portion of PUC's order concerning fair rate of return was equally conclusionary and unsupported by reasoning or findings of fact. For example, in determining the cost equity, the PUC noted that the earning to price ratio of similar utilities (a method relied on by Appellant) was a particularly useful tool in determining the fair rate of return on equity. Appellant's unrebutted witness testified that the earnings price ratio of similar utilities was 11.1% to which he added an additional 4% for the cost of equity risk. This 4% was disallowed after discussion by PUC, but without any reasoning whatsoever, the rate of return for equity was further reduced to 9.76%.[5] In the absence of any supporting finding of fact or reasoning, we must hold this figure unsupported by the evidence and hence arbitrary. There are numerous other similar examples, but in view of our decision to remand, we will not discuss them.

PUC attempts to justify its determination by reference to its purported right to make pragmatic adjustments in the required values to yield what it judges to be an equitable result. This contention was raised in

_____

[5] The PUC actually never stated this figure which was derived from the total fair rate of return and the fair rate of return on borrowed capital. The fair rate of return consists of the fair rates on equity and borrowed capital weighted to reflect the capital structure of the company.

*West Penn Power Company, supra,* and rejected by us there. We stated in 33 Pa. Commonwealth Ct. at 409, 381 A.2d at 1340, that:

> In an attempt to persuade us to pass upon the merits of these appeals, the PUC argues that we should give full recognition to the 'pragmatic adjustment' theory applied by Federal Courts in review of rate making body adjudications as expressed in Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591 (1944), and Federal Power Commission v. Natural Gas Pipeline Co. of America, 315 U.S. 575 (1942). This theory has never been adopted in Pennsylvania for the reason that the applicable statutory law pertaining to the right of a public utility to a fair rate of return upon a fair value, the role of the PUC to pass upon a rate application and to support its action with an adjudication meeting the standards of an administrative adjudication, and the role of a court in reviewing the same does not permit pragmatism to play any role that it may play in Federal decisions under the Hope doctrine.

As this appeal is to be remanded, we will not pass on the merits of the additional substantive issues raised by Appellant.

Accordingly, we

ORDER

AND Now, this 29th day of September, 1978, the order of the Pennsylvania Public Utility Commission of December 29, 1976, the subject of this appeal, is hereby set aside and these proceedings are remanded to the Commission for the purpose of its review and revision of said order and, if necessary, modification thereof, consistent with this opinion to the end that its

discussion, findings of fact and conclusions of law are sufficiently comprehensive and adequate to enable this Court on review thereof to determine the merits of any appeal from such revised order.