Philadelphia Suburban Water Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued June 6, 1978, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS, BLATT and DISALLE.

*Alan L. Reed*, with him *Thomas C. Sadler, Jr.*, and of counsel, *Morgan, Lewis & Bockius*, for petitioner.

*Melville G. M. Walwyn*, Assistant Counsel, with him *Daniel F. Joella*, Assistant Counsel, and *Barnett Satinsky*, Chief Counsel, for respondent.

OPINION BY JUDGE CRUMLISH, JR., December 1, 1978: A decision of the Pennsylvania Public Utility Commission (Commission) denying a second step water rate increase to the Philadelphia Suburban Water Company (Company/Appellant) is the subject of this appeal.

On October 1, 1975, the Company filed with the Commission Supplement Nos. 33 and 34 to its Tariff Water—Pa. P.U.C. No. 12 requesting increases in its

rates effective December 1, 1975. The effective date was subsequently voluntarily postponed to December 3, 1975. The combined proposed rate increase was intended to result in additional annual revenues of approximately $5,172,474, or an 18% increase in revenues based on the level of operations at the end of the test year, June 30, 1975. Supplement No. 33 was designed to increase revenues by 6%, or approximately $1,725,259, and intended to provide minimal interim rate relief in the event that the Commission found it necessary to suspend Supplement No. 34. Supplement No. 34 sought a 12% increase in annual revenues amounting to approximately $3,357,519.[1]

The Commission suspended the operation of both supplements to June 3, 1976 and initiated an investigation into their justness and reasonableness. Consolidated with this investigation were 11 individual complaints filed against the rate increases. A hearing before the Commission ensued. On June 2, 1976, the Commission continued the suspension of both supplements for an additional three months, but permitted the Company to file a tariff supplement providing a 4.46% increase in annual revenues amounting to $1,275,000, or approximately 75% of the increase sought by Supplement No. 33. Upon expiration of this three-month period, the Commission entered an order establishing the Company's then existing rates as temporary rates which were to remain in effect until the Commission entered its final order, which did not occur until March 3, 1977. The final order allowed only an additional 1.54% increase to annual

---

[1] The increases sought by both supplements were subsequently revised as follows:

| | | |
|---|---|---|
| Supplement No. 33 | $1,714,955 | ( 6 percent) |
| Supplement No. 34 | 3,471,532 | (12 percent) |
| | $5,186,487 | (15 percent) |

revenues thereby granting Supplement No. 33 in full and disallowing the approximate $3,471,000 increase proposed by Supplement No. 34. The Company then appealed to us.

We remand.[2]

The Commission must predicate the Company's rate base upon the "Fair Value" of the Company's property used and useful in public service and, in doing so, must consider the Company's original cost and trended original cost. *See Keystone Water Co. v. Pennsylvania Public Utility Commission*, 19 Pa. Commonwealth Ct. 292, 339 A.2d 873 (1975). *See also Scranton v. Scranton Steam Heat Co.,* 405 Pa. 397, 176 A.2d 86 (1961). Also, its "Fair Value" determination must be supported by the record. *See West Penn Power Co. v. Pennsylvania Public Utility Commission*, 33 Pa. Commonwealth Ct. 403, 381 A.2d 1337 (1978).

The Company submitted four measures of value to be considered by the Commission and the Commission made minor adjustments.[3] Those figures are as follows:

---

[2] Our scope of review in Public Utility Commission cases is limited to a determination of whether constitutional rights have been violated, an error of law committed, or if there is a lack of substantial evidence to support the findings, determination or order of the P.U.C. *See Pennsylvania Gas and Water Co. v. Pennsylvania Public Utility Commission*, 33 Pa. Commonwealth Ct. 143, 381 A.2d 996 (1977). Also, Pa. R.A.P. 1561 provides:

> (a) General rule. The court may affirm, modify, vacate, set aside or reverse any order brought before it for review, and *may remand the matter and direct the entry of such appropriate order*, or require such further proceedings to be had. as may be just under the circumstances. (Emphasis added.)

[3] The only adjustments made by the Commission to the various measures of value were to reduce the Company's claim for cash working capital by $211,000 and its claim for its committed constructiion program by $3,666,066.

| | Submitted by the Company | Adjusted by the Commission | Difference |
|---|---|---|---|
| Original Cost (Depreciates) | $127,113,728 | $123,554,811 | $ -3,558,917 |
| Trended Original Cost | | | |
| A. At June 30, 1975 prices | 328,554,811 | 324,677,745 | -3,877,066 |
| B. Three year average prices | 278,122,668 | 274,245,602 | -3,877,066 |
| C. Five year average prices | 258,495,027 | 254,617,961 | -3,877,066 |

The Company sought a Fair Value determination of approximately $202,600,000 for the test year ended June 30, 1975. Although the Commission accepted the Company's claim of $146,373,086 for undepreciated original cost[4] and approved its trending methodology and valuation procedures,[5] it determined the Company's fair value to be $150,000,000.[6] In making this finding, the Commission stated:

> [A]ll facts that have a bearing on fair value must be considered, there can be no particular formula, which defines the weighting to be accorded each measure of value. Each case must be reviewed individually to determine the accuracy, validity and authenticity of the origi-

---

4 The Commission stated at page 4 of its order, "After thorough review of the original cost in this, and [the Company's] past three rate proceedings, we will accept [the Company's] claim of $146,373,086 for undepreciated original cost of water plant in service at June 30, 1975, for the purpose of these proceedings."

5 At page 4 of its order the Commission states, "The service life estimates and survivor curves were reviewed in these proceedings as were the reasons for the changes, and they appear reasonable for the purpose of these proceedings. There was no change in the methodology from that use in the prior proceedings."

6 The $150,000,000 fair value determination is identical to the fair value set at a prior rate hearing which was based on a test year ended on June 30, 1973.

nal cost, trended original cost, or reproduction cost studies. Also, there is no set ratio of fair value to original cost bases which can be applied uniformly to all utilities. . . .

. . . .

In its opinion, at City of Pittsburgh v. Pa. P.U.C., 171 Pa. Superior Ct. 187, 198-99, 1952, the Court stated:

> 'Under the fair value rule prevailing in this state, consideration should be given to original cost and average price reproduction cost of the property; it was never intended that fair value be the equivalent of market price or cost at current prices. In determining fair value for ratemaking purposes, i.e., the value fixed at the time the rates are established, the Commission should exercise reasonable judgment on all relevant facts.' (Emphasis omitted.)

In addition, our Commonwealth Court in a recent opinion stated:

> 'From our reading of the Act, we are certain only that the sole use of original cost statistics or the sole use of reproduction cost statistics would violate the legislative intent. We have no doubt that the legislature intended an averaging process somewhere between the two extremes, and, so long as the fair value set by the PUC is not below or above those two extremes, or arbitrarily set so close to either extreme that we can discern a capricious disregard of the evidence or the law, we will not interfere.' (Pa. P.U.C. v. Pa. Gas & Water Co., Pa. Commonwealth Ct. , 341 A.2d 239 (1975) pg. 12).

. . . .

> Findings of fair value previously made by the Commission are not conclusive for the future and are not res judicata.
>
> *In consideration of the foregoing, and taking into account our comments in previous sections of this Order, all based on thorough investigation, analyses, and testing of data, we find and determine for the purpose of these proceedings, the fair value of respondent's property used and useful in public service at June 30, 1975 to be $150,000,000.* (Emphasis added.)

Although we subscribe to the principles of law enunciated by the Commission, we cannot sustain its decision. We have carefully and painstakingly reviewed the exhaustive record produced before the Commission and conclude that its findings of fair value and rate of return are conclusionary and unsupported by the record. As we said in *West Penn Power Co. v. Pennsylvania Public Utility Commission*, 33 Pa. Commonwealth Ct. 403, 406, 381 A.2d 1337, 1339 (1978), and recently reiterated in *Octoraro Water Co. v. Pennsylvania Public Utility Commission*, Pa. , , 391 A.2d 1129, 1130 (1978):

> '[T]he want of adequate discussion and critical findings of fact leading to the conclusion does not enable us to perform our judicial role. To pass upon the merits of these appeals on the present record before us would cast us in the role of making an independent judgment on the merits based upon the whole record before us, a role not given to us by law nor one which we are qualified to assume.'

At no point in its Fair Value "discussion" does the Commission afford us insight into its reasoning. It merely lists the Company's contentions and recites the general principles governing its administrative functions. We caution the Commission that it can-

not fulfill its fact finding duty by stating that there is no particular formula for determining fair value nor a uniform ratio of fair value to original cost, and that it has made a thorough investigation, analyses and testing of data. Undeniably, the Commission may exercise considerable discretion in determining fair value and a fair rate of return. It must, however, list with a reasonable degree of specificity its findings and reasoning. Because of the lack of such findings, we must remand the proceedings and we will not pass on the merits of the additional substantive issues raised by Appellant.

Accordingly, we

ORDER

AND NOW, this 1st day of December, 1978, the order of the Pennsylvania Public Utility Commission of March 3, 1977, is hereby set aside insofar as it denies the rate increase requested as Supplement No. 34, and these proceedings are remanded to the Commission for the purpose of its review and revision of said order and, if necessary, modification thereof, consistent with this opinion to the end that its discussion, findings of fact and conclusions of law are sufficiently comprehensive and adequate to enable this Court on review thereof to determine the merits of any appeal from such revised order.